## EDWARD BLAKE, Administrator, *vs.* CHARLES E. DEXTER & others.

No fixed or certain form of words is required to devise an estate in trust; but if property be devised to a person named, and afterwards a person is appointed in the will as trustee to hold and keep the same, and apply it, or the income of it, to the use of the devisee before named, this will create a trust estate.

A testator, dying in 1817, requested his executor or administrator to "appropriate" his property, real and personal, for the use of his wife "and that of my dear and much beloved children, to be appropriated in such manner as she may deem most for her and their happiness; subject, however, to the following deductions and stipulations which are particularly to be observed by my executor or administrator;" viz: In case his wife should marry again, he requested his executor or administrator "to allow and pay over to her one third part only of my real and personal estate, and the remaining two thirds to be divided equally between my dear children, one half only allowed to each to be put under their control as they become of age, and the other half to be an entailed estate during their life, and so descend to the posterity of each, and in case of death without issue, to be regularly divided in proportionable parts between the survivors. In the event of my dear wife not changing her state by marriage, I hereby particularly request all my estate to remain under her control, subject to the advice and direction of my executor for her use and that of my dear children; and when she departs this transitory life, I particularly request the estate or effects of every kind should be divided in regular proportions to my dear children, and so descend to their heirs in said equal proportions"; subject, however, to the stipulations before stated, as to the entailment of one half of the estate. Five children survived the testator, and the executor named in the will died in 1824. An administrator, with the will annexed, took charge of the estate until 1847, when an administrator *de bonis non* was appointed, and the widow died unmarried the same year. *Held*, that the executor, and not the widow, took a trust estate in fee, and that such trust devolved upon the administrator *de bonis non*, until the death of the widow.

*Held also*, that the provision in the will that after the widow's death one half of the estate should be invested in entailed real estate, during the children's life, and descend in the same manner to the posterity of each, and in case of death without issue, be regularly divided between the survivors, was void, and that a resulting trust was created in favor of the heirs, under which the property should be divided according to the statute of distributions.

BILL IN EQUITY, brought by Edward Blake, administrator *de bonis non*, with the will annexed, of the estate of his father, Edward Blake, Jr., who died testate, January 15, 1817. His will, which was duly proved and allowed, contained the following provisions:

" In respect to the worldly property it has pleased God to bless me with, after all my just debts are paid, I hereby request my executor or administrator to appropriate in the following manner, having perfect confidence in the good judgment of my dearly and much beloved wife, and also of her benevolent and Christian feelings, I hereby give and bequeath all my estate, real and personal, for her use, and that of my dear and much beloved children, to be appropriated in such manner as she may deem most for her and their happiness; subject, however, to the following deductions and stipulations, which are particularly to be observed by my executor or administrator."

Then followed specific legacies to his brother Samuel Blake, and his brother-in-law, Jacob Emmons, the nature of which was immaterial.

The will then proceeded : " Should my dearly and much beloved wife deem it for her happiness to change her state and become the wife of another, I cannot reasonably object to it, having unbounded confidence in her good judgment, and especially considering the very great charge she has in the number of my dear children ; but, in the event of this taking place, I hereby particularly request my executor or administrator to allow and pay over to her one third part only of my real and personal estate, and the remaining two thirds to be divided equally between my dear children, one half only allowed to each to be put under their control as they become of age, and the other half to be an entailed estate during their life, and so descend to the posterity of each, and in case of death without issue, to be regularly divided in proportionable parts between the survivors.

" In the event of my dear wife not changing her state by marriage, I hereby particularly request all my estate to remain under her control, subject to the advice and direction of my executor, for her use and that of my dear children ; and when she departs this transitory life, I particularly request the estate or effects of every kind should be divided in regular proportions to my dear children, and so descend to their heirs in said equal proportions ; subject, however, to the stipulations that

one half only is to be placed under their control, as they become of age, and the remaining half to be invested in en-tailed real estate, during their life, and descend in the same manner to the posterity of each, and in case of death without issue, to be regularly divided in proportionable parts between the survivors."

The bill then set forth that: " The widow of the deceased did not marry again, and died April 10, 1847. Five children survived the testator, — Sarah R. Blake, who afterwards mar-ried Charles P. Dexter, and died in November, 1850. Samuel P. Blake, Edward Blake, and James H. Blake, and Susan P. Blake, who married Richard Robins ; he died in July, 1850.

" Samuel Parkman was appointed executor of said will, and acted as such until his death in 1824, when Robert G. Shaw was appointed administrator of said estate with the will an-nexed. He resigned in 1847, and the complainant was appointed in his place. Prior to the resignation of said Shaw, one half of the estate of said testator was divided among his said children, at the request of their mother, it being clearly the intent of the testator, that they should receive one half of their respective shares as they became of age, and she was disposed to waive the provision of the will, which would have enabled her to prevent any such division during her life. At her death, there remained under the administration of said Shaw, one half of the estate of said testator ; and the same came to the possession of the complainant. No division of the same has been made, but the interest and income thereof have been regularly paid over to the parties entitled thereto.

" The property consists in part of real estate, of which the testator died seised, viz: A dwelling-house in South street, Boston, valued at $6,000. A dwelling-house in Warren street, Boston, valued at $3,500. A piece of land in Cambridge-port, valued at $700. Store No. 25 Central Wharf, Boston, with one right in said wharf, valued at $16,000. Store No. 15 South Market street, Boston, purchased by Robert G. Shaw, as administrator, and conveyed by him to the complainant, valued at $25,000. Money at interest, secured by mortgages, &c., &c., $27,632.60. Total, $78,832.60.

" Said Sarah R. Dexter left four children, all of whom are of age. Charles E. Dexter, who now resides in Columbus Georgia; Samuel P. Dexter, of said Boston, merchant; Amory Dexter, now residing in Hamilton, Canada; and Sarah B. Wainwright, wife of Henry C. Wainwright, of said Boston, merchant; and by a marriage contract, her share of said property is secured to her sole and separate use.

" The said persons claim of the administrator *de bonis non*, one fifth part of the property held by him, as above, and that the same shall be paid over to them in cash, and free from all trusts. And said Samuel P. Blake and Susan P. Robins claim their share of said estate; and also said James H. Blake; but if he is entitled to it, said James wishes to carry into effect an arrangement made in 1847, that the share belonging to him shall be held by the complainant in trust, for the use and benefit of said James during his life, with authority to expend the whole or any part of the income of said James's share in the maintenance of his family, and in the education of his children."

The bill was brought to obtain the direction of the court, as to the effect of the provision made by said testator, that one half of the property given by him to his children, should " be invested in entailed real estate during their life, and descend in the same manner to the posterity of each, and in case of death without issue, to be regularly divided in proportionable parts between the survivors."

The answer of the respondents, after admitting the substantive facts set forth in the bill, proceeded as follows: " And the said Charles E. Dexter, Samuel P. Dexter, Amory Dexter, Sarah B. Wainwright, and Henry C. Wainwright, five of the respondents, admit that they claim and demand together one fifth part of the personal property in the hands of the complainant as such administrator; and that they claim to be entitled to one undivided fifth part of all the said real estate in fee simple.

" And the said Samuel P. Blake and Susan P. Robins, two other of the respondents, claim respectively a fifth part of all said property in like manner. And the said James H. Blake,

the remaining respondent, claims one other fifth part of all said property in like manner, but to be held subject to the trust set forth in the said bill of complaint.

" And these respondents further answering say, that they are advised, and allege that the testator intended by the provisions in said will, touching his children and descendants, to create a perpetuity, by ordering investments to be made in real estate, with a successive limitation of life estates to persons unborn, from generation to generation; and by the provision that in default of issue of any of the tenants for life, the share of such tenant for life should go over to the surviving tenants for life, so that the same might remain always in the posterity of the testator; which intent, as these respondents are advised and informed, is contrary to the well-settled policy and principles of the law of this commonwealth, and illegal and utterly void.

" And these respondents further answering say, that by reason of the illegality and nullity of the provisions of said will in that behalf, the real and personal property of the testator, not otherwise specifically devised and bequeathed, descended to his children as his heirs at law in fee simple.

" And these respondents further answering say, that the complainant in his said bill has suggested, that if the intention of the testator as expressed in said will could not legally be carried into effect, yet this honorable court might construe the devise in said will to be an executory trust; and execute the intention of the testator *cy pres*, according to a rule sometimes applied in the courts of equity in England; but these respondents have been advised that no such executory trust is created by the said will; and that this honorable court has not adopted the rule of *cy pres*, so called, in the construction of any will; and that many of the courts in this country have opposed and rejected the adoption thereof.    That the rule of *cy pres*, so far as applied in England, has not been uniformly applied, and is not applied to personal estate, of which much the largest portion of the estate of the testator consisted at his decease; and that so far as the same has been applied in England to real estate, it has been mainly in cases where the

testator has manifested a general intent that the lands devised should continue in the descendants of the first taker as long as there were any, without specifying or marking what estates the descendants should have; or where he had manifested a general intent and a particular intent, both of which could not be effectuated by the rules of law, and, therefore, one must yield to the other; and the same has not generally, if ever, been applied to cases where the testator, as in this case, has in express terms, defined the estates which the issue are to take, as estates for life; nor ever in a case, where as in the present, the testator has manifested no general intent as distinguished from a particular intent; but simply a single intent, to create a succession of life estates in his posterity to the latest generation, contrary to the policy and laws of this commonwealth.

" And these respondents further answering respectfully allege, that this honorable court has only limited jurisdiction in equity, and has no power to direct investments under said will in such manner as to give to the devisees, estates different from, and other than those the testator gave, or to turn a legal devise into an executory trust, and thereby in effect make a new will for the testator.

" And these respondents further answering respectfully allege, that if this court doth possess the power of carrying into effect the intent of a testator by the rule of approximation or *cy pres,* that the present is not a fit case for the application of the rule; inasmuch as the testator has clearly declared his intent, that all the property at the decease of his wife shall be divided in equal proportions to his children, one half absolutely as they come of age, and one half to be invested in entailed real estate during their lives, and descend in the same manner to the posterity of each, and in case of death without issue, to be divided among the survivors; evincing a clear purpose to prevent alienation and preserve the estate in his posterity to the latest generation, by giving a life estate to each successive taker. This one half, therefore, must either be divided as intestate estate, or must be invested as this court may order, by carrying into effect the intent of the tes-

tator *cy pres;* and if the rule of *cy pres* is applied, it will involve the necessity of the purchase of real estate to be held by the testator's children for life, with remainders in tail to their children; an estate which could be barred by the tenants in tail, and which admits of free alienation; so that the *cy pres* investment, if directed, would be entirely different from any contemplated by the testator according to the intent as expressed in his will, and would in fact directly contravene his primary and paramount purpose, of preventing alienation and preserving the estate in his posterity."

The case was submitted at the last March term, without argument on the part of the complainant, and on a written argument by *W. Dehon* for the respondents.

SHAW, C. J. In addition to the ordinary difficulties in putting a satisfactory construction upon a will not drawn with legal skill and technical accuracy, and in ascertaining the precise intention of the testator, we have here to encounter a difficulty of another kind, but perhaps quite as formidable. It is quite manifest upon the face of this will, that the testator entertained a purpose to dispose of his estate in a manner not admissible by the rules of law; so that we are deprived of the benefit of the familiar rule, regarded as almost a sure guide in the interpretation of a will, which seeks for the intent of the testator, and as that is found, to carry the will into execution in conformity with such intent.

1. The first question is, what was the nature and character of the estate created by force of this will? Was the legal estate intended to vest in the objects of the testator's bounty, his children and grandchildren? or, was it his intention to accomplish those purposes, which he could consistently with the rules of law, by vesting the legal property in trust, and to provide for the objects of his bounty, by securing the beneficial interests only, to be received by means of the trust thus created? One consideration bearing upon this point seems very clear, that whatever the nature of that estate was, it must be that of the character impressed upon it by the will, at the time the will took effect; it could not be of a shifting character, so that the estates of the children and grandchildren would be

sometimes legal and sometimes equitable interests, according as contingencies might occur.

No fixed or certain form is required to devise an estate in trust; it is not necessary that the estate be devised to one as trustee, with trusts formally declared. If property be devised to persons named or described, and afterwards, one or more persons are named in the same instrument as trustees to hold and keep the same, and apply it, or the income of it, to the use of the person before named as devisee, both clauses will be construed together, to carry into effect the intent of the testator, and it will be construed to be a trust estate. So, where it is manifest that the person intended to be benefited, is not to hold, keep, manage, or have possession of the property, but no trustee is named, the executor, or administrator with the will annexed, will, by implication, be considered as a trustee.

Where, upon the terms of the will, it is left doubtful and open to construction, whether certain clauses and provisions, taken together, constitute a legal or an equitable estate, the intent of the testator, so far as such intent is legal and can be carried into effect consistently with the rules of law, will have a governing influence. Taking all the facts of such a will together, in determining whether in any instance the will creates a legal or a trust estate, that construction will be regarded the true one, which will best subserve and carry into effect all the obvious and legal intentions of the testator.

The first thing to be remarked in this case is, that under this will there is no direct and express devise to anybody ; it is a devise by implication only. In the first clause, accompanied with words common in the introduction of wills, when a testator intimates his intention to make a testamentary disposition of his property, he says, " in respect to the worldly property," &c., " after all my just debts are paid, I hereby request my executor or administrator to appropriate," &c.

So in a succeeding clause, on the contingency of his wife's marrying again, he says: " but in that event, I hereby particularly request my executor or administrator to allow and pay over to her, one third part only." So in case she does not marry, he requests that all the estate be kept under her

control, subject, &c., and when she departs this transitory life , the estate and effects of every kind be divided equally among his children, and subject, however, to this stipulation, " that one half only is to be placed under their control as they become of age, and the remaining half to be invested in entailed estate," &c.   There is no express devise, in fee or otherwise, but all these clauses imply necessarily, that the property is held rightfully and by title, property real and personal, with directions from one having a disposing power, to invest, hold, divide, distribute, and dispose of it, in modes in which it could only be done by one having a fee, and, therefore, it is construed to be a legal estate in fee, broad enough to enable a trustee to perform the duties required.

When the will was made and took effect, it looked to three conditions in which the estate might be placed, and for which it was intended to provide : 1st. The widowhood of the wife. 2d. The event of her being married again. 3d. After her decease.   In the first case, she is entitled to receive the whole income.   In the second, she is to receive a reduced share of the real and personal property.   In the third, the whole property is to be distributed, disposed of, or invested in real estate to be settled on the children by entail.   All these require and imply that the property is to remain together, till after the marriage or decease of the widow.   This could hardly be accomplished, except by holding that the property was to be taken and held in trust, and strengthens the presumption that it was so intended by the testator.

But a question might arise, and we think it was intimated in the course of the argument, that the wife herself and not the executor, must be taken and deemed the trustee.   There are some expressions, which, if they stood alone, might warrant such a suggestion ; and probably the testator himself had no exact legal apprehension of the relations in which, by the terms of his will, he placed the widow and executor respectively.   In the middle of the first clause cited, not as a new and substantive provision, but in connection with expressions of confidence in his beloved wife he says, " I hereby give and bequeath all my estate, real and personal, for her use, and that

of my dear and much beloved children, to be appropriated in such manner as she may deem most for her and their happiness; subject, however," &c. These and other expressions in the will are indicative of trust and confidence in the wife, which uncontrolled would correspond with expressions commonly used to create trusts. But they are everywhere modified, and used subject to the advice of the executor or administrator, and subject to the stipulations and provisions to be observed by the executor.

We are, then, to compare these expressions in the will, with those in which the right of property and the power of disposition is given by implication to the executor. By the first clause, he directs his executor to " appropriate." This is a clear implication that he is assumed to hold that which he is directed to appropriate. But a much more decisive clause is that in which he directs the executor, in case of her marrying again, to allow and pay over to her, one third only ; the other two thirds to be divided, &c. This is a strong implication that the person to whom this direction was given, was the holder of the entire estate. Had the property been supposed to be in the hands of the widow as trustee, instead of directing anything to be paid to her, there would have been a direction to her, to refund and restore two thirds, retaining one third only to her own use.

Further ; the ultimate settlement of the estate is to be effected by investing the whole of each son's and daughter's share in real estate, to be settled on each, and his or her lineal heirs, in the mode directed. In point of fact a considerable part of the property was personal. Who else but the executor could invest such personal property? The executor alone, by law, has the special property in, and the entire disposal of the personal property. Indeed, there is no way, in which by the terms of this will, the executor could " administer the estate," according to the will and according to law, but by thus investing it in real estate. The conclusion from which is that he was to hold and administer the estate, until such final distribution, thereby assuming him to be the holder of the property and trustee.

If the property of the testator vested in the executor named by him in his will, it is quite clear that the trust would devolve on the administrator *de bonis non* with the will annexed. It is so given in terms by the will. The same clauses which create a trust estate in the executor apply to the administrator. In general, where trusts are necessarily connected with the official duties of the executor, and are obviously subservient to the due execution of the will, the powers and trusts vested in the executor, *qua executor*, are held by necessary implication, to devolve on the administrator *de bonis non*, when not so expressed. In this will both concur; the trusts and powers vested in the executor, are necessarily subservient to his official duties in executing the will, and, therefore, pass to the administrator *de bonis non*, and they are also vested in terms in the one as well as the other.

2. It may be proper to say, though not in this case a subject of controversy, that the distribution of one half of this estate, in the lifetime of the widow, by her consent, appears to us to have been well warranted by the will. It was obviously the intent of the testator, that one half of the share coming to each child and grandchild, should be distributed to and amongst them, to hold absolutely in their own right respectively, at the decease of the widow. The estate to be kept as a whole during her life, to give her the benefit of the income. But as she consented to waive her right in that respect, it was competent for all those who were interested, to have the property so distributed during the life of the widow. That moiety, therefore, is now out of the question, and the present suit concerns that moiety only, which the trustees were directed to invest in entailed estates, for the heirs respectively, and to their heirs in like manner forever.

3. Supposing, then, that this was a trust estate in the executor, and after his decease, vested, first, in Robert G. Shaw, as administrator, and after his resignation, in the present complainant as administrator *de bonis non*, the question is how, in the events which have happened, these trusts are to be executed. The trust was manifestly intended to subsist until the decease of the widow, and then it was to be brought to a

48 *

close, and a final disposition of the estate be then made. The direction is, after the decease of the widow, not having married again, that the estate or effects of every kind, are to be divided among his children and their heirs; one half without restriction; the remaining half to be invested in entailed real estate during their life; that is, the life of each child, and descend in the same manner to the posterity of each; and in case of the death of any one without lineal heirs, to be regularly divided in proportionable parts between the survivors.

This was to be the ultimate and final settlement of this estate. When it is said that the property of each child and grandchild, each of the parties entitled, shall be " invested," &c., somebody is to make the investment. Nobody can do this but the executor, the trustee who holds the property. The direction, therefore, in effect is, that the trustee shall convey real estate, or cause it to be conveyed by some one else, by some instrument of conveyance, which shall cause the property to be held and to descend, by a tenure wholly inconsistent with the rules of law. A man cannot, under this general *jus disponendi*, thus tie up property in perpetuity, and make it inalienable, in his own posterity. It is a legal impossibility. He might as well direct, that no one of his posterity should contract debts, or educate a son, or portion a daughter, or make any of the uses of property, for which property is valuable. Any attempt of the trustee to accomplish the purpose directed by the testator, would be utterly unavailing. The consequence is, that the direction itself was void and of no effect.

4. The remaining question is, under the existing circumstances, where all the legal purposes of the testator, so far as they are indicated by his will, have been accomplished, what disposition shall be made of the remaining real and personal property. The answer, we think, is clear, that in such case the law raises a resulting trust in favor of the heirs, under which the property will be divided and paid out according to the statute of distributions. Under our law of inheritance, by which real and personal estate pass by descent to the same persons and in the same proportions, in executing a resulting

trust for heirs and distributees, it makes no difference whether the trust estate be real or personal.    Such a distribution will be directed accordingly.

In regard to the main point above stated, that the executor and the administrator *de bonis non* after him, took an estate in fee or an absolute estate, so far as the personal estate is concerned, we think there can be no doubt.    The law vests the entire personal property in the executor, and he is special owner of it until it is disposed of according to law.    He holds it in trust for all persons concerned, whether as creditors, legatees, heirs, or otherwise.    These are general trusts.    The executor, therefore, held the legal estate independently of any bequest to him.    No direction was given him by the will how to dispose of the residue after payment of debts, and after the decease of the widow, except by directing him to invest it in real estate to be settled as hereinbefore stated.    He did engraft a special trust upon the property, by directing him to hold it during the life of the widow, of course to keep it at interest, or invested to raise income, and pay the income to her.    It was, therefore, the case of a legal estate in the executor, clothed with a trust by one having power to declare such trust, and this constituted the executor a trustee of the property.

Possibly a doubt may arise, whether this reasoning will lead to the same result in regard to real estate.    Real estate does not by law vest in the executor, but passes directly to the devisee or heir.    But we have supposed above, that the executor took a fee in the real estate, because the objects of the testator clearly were to declare a trust, which would require a legal estate in fee to support it.    It is a settled rule of law, that when an estate is charged with a trust, and the legal estate is created without words of limitation, the legal estate will be held to be a fee simple or any lesser estate, as the one or the other may be sufficient to support and carry into effect the objects of the trust.    If an estate *pour autre vie,* or an estate for the trustee's own life be sufficient, the legal estate thus created without words of limitation, will not be construed to be larger.

We have already said that the nature of the estate created by the will, must be determined by the will itself, and could not depend on subsequent contingencies. When the will was made, the trusts declared by the testator undoubtedly looked to a final disposition of the estate in perpetuity, and therefore, required the legal estate to support it, to be an estate in fee simple, and, therefore, we have thought the legal estate by implication created by this will, as before stated, to be an estate in fee simple. Now the doubt, if there be any, is this: though the declared trust of the testator required the legal estate to be a fee, yet we now find that such declared trust was illegal and void; and the only part of the trust declared by the will, which we hold to be valid, could be satisfied, by holding the legal estate to be an estate for the life of the widow. Still, as the implication from the will, whether the legal estate was an estate in fee, or an estate *pour autre vie*, there being no words of limitation, depends on the language of the testator, and as he had manifested an intent to create a legal estate in fee simple, which intent, in itself, and independent of its object, was not illegal, it is most conformable to the true principles of interpretation, to construe it a fee simple.

Still, there is a satisfaction in considering, that as to the real estate, the question, whether the legal estate was vested in the executor or not, is comparatively immaterial. If the executor took a legal estate for the life of the widow, and no disposition was made by the will of the reversion, that reversion would pass to the heirs at law of the testator by descent, as intestate estate, and in the events which have happened, the children and grandchildren, who will now take under this decree, would have taken the same property, and in the same proportions, by right of inheritance. The only question, therefore, so far as the real estate is drawn in question is, whether in a legal view, the respondents are entitled to their respective shares in the estate of their ancestor, as *cestuis que trust* under the will, or as heirs at law of estate not reached by the will. We shall order the estate to be distributed among the respondents, as trust estate held upon a resulting trust for them as

heirs at law, in the manner and in the proportions indicated by the following decree :

It is ordered, adjudged, and decreed as follows, viz : That said Edward Blake be and he is hereby authorized and required to convey to Samuel P. Blake, one of the respondents to the original bill of complaint in the above entitled cause, one undivided fifth part of all the parcels of real estate named in said bill, being all the real estate held under the will of Edward Blake, Jr., late of Boston, in said county of Suffolk, merchant, deceased, and all the real estate held by said Edward Blake, as administrator with said will annexed, in trust. To have and to hold the same to said Samuel P. Blake, his heirs and assigns, free and discharged from all the trusts and provisions contained in said will.

And that said Edward Blake convey in manner aforesaid to Susan P. Robins, one of said respondents, one fifth part of said real estate to hold as aforesaid.

And that said Edward Blake convey to William Minot, Jr., of said Boston, Esquire, one fifth part of said real estate upon special trust to convey the same to said Edward Blake, to have and to hold the same for the use and benefit of James H. Blake, one of said respondents, as set forth in said bill of complaint.

And that said Edward Blake convey in manner aforesaid to Charles E. Dexter, Samuel P. Dexter, Amory Dexter, and Sarah B. Wainwright, wife of Henry C. Wainwright, the other respondents named in said bill one fifth part of said real estate, to have and to hold the same in manner aforesaid as tenants in common.

And that said Edward Blake shall and may hold the remaining undivided fifth part of said real estate to his own use and benefit in fee simple, free and discharged from all the trusts and provisions above named and referred to.

And it is further ordered, that the conveyances aforesaid shall be made under the direction of William Minot, Esquire, a master in chancery.

And it is further ordered, adjudged, and decreed that said Edward Blake shall distribute all the personal property remain-

ing in his hands as administrator of the estate of said deceased, upon a final settlement of his probate account, to and among the same persons and in the same proportions as above expressed in relation to the said real estate, one fifth part thereof to be for the use and benefit of said James H. Blake and said complainant, retaining one fifth part to his own use in his own right, free and discharged of any trust; but he shall hold the part for said James H. Blake upon trust, as above set forth in relation to the real estate for him.