## COLT & Another *v.* COLT, Executrix.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CONNECTICUT.

Argued April 18th, 21st, and 22d, 1884.—Decided May 5th, 1884.

*Estoppel—Executor and Administrator—Practice—Trust—Will.*

When an infant, properly served in a suit pending before a State court, is before the court, the question whether to proceed by general guardian or by guardian *ad litem* is local to the law of jurisdiction; and when passed upon by the courts of that jurisdiction the proceedings are conclusive upon the Federal courts as there is no question of jurisdiction.

A court of competent jurisdiction may determine the proper distribution of vested bequests, even though the possession and enjoyment are deferred.

A bequest to the executors of the testator and their successors in office, with directions to apply the income and profits to the education of minor children, and to divide the gift and its accumulations among the children on the coming of the youngest to the age of twenty-one years, vests *virtute officii* in the executors who qualify, and on the death or removal of any one of them his successor succeeds to his title.

As long as personal property is held by executors as part of the estate of the testator, for the payment of debts or legacies, or as a residuum to be distributed, they hold it by virtue of their office, and are accountable for it as executors.

When there is a question as to the distribution of a residuum of personal property in the hands of executors, who are also trustees under the will for minors claimants to a part of it, the duty of the executors towards the minors is discharged when they are brought before the court with their guardian, and their interests are fairly placed under the protection of a court of equity.

This was a bill in equity to recover certain shares of the capital stock of Colt's Patent Fire-arms Manufacturing Company, a corporation of Connecticut at Hartford, in the hands of the executors of Samuel Colt, deceased, as a part of his residuary estate, under his will.

The complainants were children of the late Christopher Colt, a brother of the testator, and Mrs. Theodora G. Colt, their mother, who was assignee of the interest of a deceased son. The defendants were executors of the last will of Samuel Colt, and trustees, and others, legatees claiming interests under the same.

The testator, Samuel Colt, made his last will and testament June 6, 1856, and thereafter two codicils, one on January 12, 1858, the other February 2, 1859. He died at his domicil, Hartford, Connecticut, in 1862, and his will and codicils were duly admitted to probate and record. A large part of his estate was comprised in 9,996 shares of the capital stock of the Colt's Patent Arms Manufacturing Company.

By his will he bequeathed 1,000 shares of this stock to his widow for life, with remainder to his after-born children, and to each of the latter also 500 shares; 100 shares to Samuel Caldwell Colt, a son of a brother, "when he shall have arrived at the age of twenty-one years;" to the children of his brother, Christopher, 100 shares each, "as they shall arrive at the age of twenty-one years," respectively. He gave other legacies of stock to other named persons, and provided means for the foundation and establishment of a school or institution for the instruction and education of young men in practical mechanics and engineering. It contained also the following:

"To my brother, James B. Colt, now of said city of Hartford, I give and bequeath the use and improvement during his life of five hundred shares of the stock of said Colt's Patent Fire-arms Manufacturing Company, and after the death of my said brother, to his issue lawfully begotten, as an absolute estate. This bequest is on condition that the said James B. Colt shall waive and relinquish all claims and demands, actual or pretended, which he may have against me or against said Colt's Patent Fire-arms Manufacturing Company.

"I also give and bequeath to my executors and their successors in said office five hundred shares of the stock of said Colt's Patent Fire-arms Manufacturing Company, in trust for the issue of said James B. Colt, lawfully begotten, the profits and dividends thereof to be applied to the education of his said issue, so far as the same may be necessary for that purpose, until the youngest surviving of said issue shall have reached the age of twenty-one years, when said stock and all accumulations thereof, if any, shall go to said issue, in equal proportions, as an absolute estate."

He gave also a legacy in stock to each of his executors.

·The residuary clause was as follows :

" All the rest and residue of my estate, of every kind and de-
scription, not herein disposed of, I give, bequeath, and devise as
follows : All the remaining stock of said Colt's Patent Fire-arms
Manufacturing Company, of which I shall die possessed, shall be
divided amongst the several persons and parties to whom I have
hereinbefore given legacies of stock, in the ratio and proportion
in which said legacies of stock are hereinbefore given.   All my
other residuary estate shall be divided amongst the several persons
to whom I have hereinbefore given pecuniary legacies in gross, in
the ratio and proportion in which I have hereinbefore given such
pecuniary legacies, meaning that my residuary estate in said stock
shall be shared by the same persons to whom I have given specified
legacies in stock, and in precisely the same ratable proportions,
and that my other residuary estate shall be shared by the same
persons to whom I have given gross pecuniary legacies, and in
precisely the same ratable proportions."

. The first codicil contained the following :

" I also revoke and cancel, for reasons growing out of his late
unbrotherly conduct towards me, the legacy of five hundred
shares of the stock of Colt's Patent Fire-arms Manufacturing
Company, given in the aforesaid will to James B. Colt, for life,
remainder to his children ; and, in lieu thereof, I give and be-
queath said five hundred shares of stock to the trustees named in
said will for founding a school for practical mechanics and engi-
neers, subject to the uses and trusts created in said will for that
purpose."  .

By the second codicil, all the provisions previously made for
founding and carrying on the school for mechanics were can-
celled.   It also contained the following :

" I hereby give and bequeath to each of the children of James
B. Colt a legacy of one hundred dollars, and I hereby cancel and
wholly revoke any and all other legacies or devises by me hereto-
fore at any time made to or for the use and benefit of said chil-
dren or any of them.   I give to the eldest son of my brother
Christopher Colt a legacy of one hundred.dollars and no more,

and all legacies heretofore made in his favor are cancelled and revoked, and I hereby give, bequeath and devise to the other children of my said brother (said eldest son not being included herein) the property to wit : five hundred shares of the stock of the Colt's Patent Fire-arms Manufacturing Company, which in and by said original will is bequeathed to my executors in trust for the use of the children of said James B. Colt, to have and to hold to said other children of the said Christopher in equal proportions. This last bequest is in trust for said children, and the property hereby bequeathed is to be held by my executors for said children in the same manner and subject to the same limitations as are provided in said original will in the bequest to the children of said James B. Colt. And I hereby confirm and establish said original will as altered, changed and modified by this and the previous codicil, as and for my last will and testament."

Elizabeth H. Colt, the testator's widow, Richard D. Hubbard, and R. W. H. Jarvis were appointed and qualified as executors of the will.

After the death of the testator, his brother, James B. Colt, claimed that the cancellation by the first codicil of the specific legacy in the will to him for life, with remainder to his issue, of 500 shares of the stock, did not have the effect of cancelling his interest under the residuary clause, on the ground that that clause should be construed as an independent disposition of the remaining stock, to the very persons, only, described as those to whom specific legacies of stock had been thereinbefore, that is, in the will, given, as if they had been again named ; and not, as a dependent legacy to those who, under the codicils as well as the will, became ultimately entitled as legatees to specific legacies of stock, although these legacies might be of the same stock which, in the will itself, had been originally given to others, and afterwards cancelled. This claim consisted of two parts, first, of a right in himself to share in the residuum, and second, to exclude from it those to whom by the codicils alone, and not by the will, specific legacies were given. This branch of the claim necessarily antagonized the right of the children of Christopher Colt to participate in the residuum by reason of the legacy given to them in the second codicil.

To assert his interest in the residuary estate, and to deter-
mine its amount, and the several interests of all entitled to
share in it, James B. Colt, in July, 1864, filed his bill in equity
in the Superior Court of Connecticut for Hartford County.

To that bill, parties defendant, among others, were made as
follows: Mrs. Elizabeth Hart Colt, as claiming an interest un-
der the will, and also as executrix, and as administratrix of
Henrietta Colt, deceased, and as guardian of Caldwell Hart
Colt, a minor; Richard D. Hubbard, as claiming an interest
under the will, and as executor; Richard W. H. Jarvis, as
claiming an interest under the will, and as executor; Isabella
DeWolf Colt, LeBaron B. Colt, Edward D. Colt, and Samuel
Pomeroy Colt, all the last three being minors; Theodore De
Wolf Colt, their guardian; and were duly served with process.

A demurrer to this petition was filed on behalf of all the
defendants, and was reserved for the advice of the Supreme
Court of Errors, whose decision thereon was reported in *Colt
v. Colt*, 32 Conn. 422. From that report, the case seems to
have been fully argued and thoroughly considered. The de-
murrer was overruled. The court decided that the bequest of
a share of the residuary stock to James B. Colt had not been
revoked; that the language of the revocation was plainly lim-
ited to the first five hundred shares; and that the second legacy
to him of a share in the residuary stock must be regarded as an
independent legacy, the reference to him, as a person to whom
the previous legacy has been given, being merely *designatio
personæ*, not having the effect of attaching together the two
bequests, as necessarily connected in the same ownership, and
that the latter was, consequently, not affected by the revoca-
tion.

The cause thereupon came on again in the Superior Court,
the respondents having been ordered to answer over, and
where, as it was recited in its record, "the parties again appear
and are at issue upon a general denial of the allegations in the
plaintiff's bill," and thereupon the court made a finding of
facts. Among other findings, after referring to the will and
codicils of the testator, it was stated that "the parties in this
cause are interested in the estate of the said Samuel, in man-

ner and form and to the extent and proportion in said will and codicils expressed, set forth and contained." It was also stated, that there were children of Christopher Colt, a brother of the testator, "to wit, the eldest son of the said Christopher, named in said will, and the said Isabella De Wolf Colt, and three children of the said Christopher, then minors under the age of twenty-one years, to wit, LeBaron. B. Colt, Edward D. W. Colt and Samuel Pomeroy Colt, of which minor children the said Theodora De Wolf Colt was and is the legal guardian, all of whom are residents in Hartford, but the said Edward D. W. Colt has, since the last term of this court, arrived at his majority." It had been previously recited that when the parties appeared, the minors "were duly represented by their guardians." The Superior Court reserved, for the advice of the Supreme Court of Errors, the following questions arising upon the record of the case:

"1. Whether the interest taken in the residuum by James B. Colt is a life estate or an estate in fee?

"2. Whether said Colt shall receive interest upon the dividends made on his residuary stock; and if so, from what time?

"3. Have the legacies which the children of the testator, who deceased in his lifetime, would have taken had they survived him, lapsed, or are they to be considered and treated as intestate estate?

"4. Do the said children of Christopher Colt take any share in the residuum of stock in respect to their legacy of 500 shares given to them in the codicil to said will?

"5. Do the said R. W. H. Jarvis and H. C. Deming both take a legacy of stock under said will, or only one of them, or neither of them?

"6. What is the amount of the residuum of the stock, and who are entitled thereto, and in what proportions?

"This court also reserves all other questions arising upon the record, and also the questions as to what decree shall be passed in this suit."

These questions were decided by the Supreme Court of Errors, as found in the report of the case of *Colt* v. *Colt*, 33 Conn. 270.

In answering them, the court held that James B. Colt took an interest in the residuary stock for his life only. It said: "The revocation was not sufficiently broad to take away the interest of James B. in the residuum. It was broad enough to take away that of the children. But there is nothing whatever to show an intention to enlarge the interest of James B., and such could not be the legal effect of a mere revocation of the interest of the other parties. It is not material to inquire what disposition is to be made of that remainder."

In answer to the question, whether the children of Christopher Colt take any share in the residuum in respect of their legacy of 500 shares given to them in the codicil to the will, the court said:

"The fourth question must be answered in the negative. In giving a construction to the will, we held that the residuum was given independently to the *persons* and *parties* to whom stock was *thereinbefore given*. It follows logically that persons and parties to whom stock was not *thereinbefore given* cannot take under the residuary clause."

Finally the court declared that the amount of the residuum of stock was 5,346 shares, and proceeded to allot it to each person entitled by name, and among others, to Christopher's children 459$\frac{32}{47}$ shares, and to J. B. Colt for life, 574$\frac{32}{47}$ shares. In pursuance of these instructions, a final decree was entered in the Superior Court, adjudging the above amounts of stock, respectively, among others, to James B. Colt, for life, and to the children of Christopher Colt, "in the manner specified in the will."

It will be observed that this decree, which was entered in March, 1866, disposed of the title and right in the whole residuary stock, then in the hands of the executors for final distribution, except the remainder in 574$\frac{32}{47}$ shares, set apart to James B. Colt for life.

In accordance with its terms, the distribution of the stock, and of its dividends and accumulations, was actually made to the parties respectively; the executors, however, continuing to hold the stock awarded to the children of Christopher Colt, as trustees under the will, until January 11th, 1873, when the

youngest having arrived at full age, and that being the period for division among them, final payment and division to each was made, and a full settlement had between them and the executors, as such, and as trustees. The executors also held the stock allotted to James B. Colt for life, from the entry of the decree of the Superior Court establishing his right, paying to him its income until death, which took place October 28th, 1878, and thereafter, for final distribution to those entitled.

The complainants, who were the appellants, thereupon, on January 4th, 1879, then being citizens of Rhode Island, filed the present bill, in which, as finally amended, they set out the various provisions of the will and codicils of Samuel Colt, heretofore recited, and their claims thereunder as the children of Christopher Colt, their mother joining with them, as assignee and representative of the share of one deceased.

They set out that, up to the time of filing the bill, they had only received from the estate of the testator the following, to wit : One hundred shares each of stock legacies given to them under the will ; four hundred and sixty shares of the residuary stock in respect of said legacies of one hundred shares each and the accumulations thereon, $2,500 gross legacies and the residuum, thereon ; said five hundred shares of stock and dividends thereon given in trust for them in the codicil ; which last had been paid over to them on January 11th, 1873, excepting such portions of the accumulations thereon as had been included in payments made by the trustees to some of them for purposes of education during their minority.

But they claimed that in addition they were entitled to receive the $574\frac{24}{31}$ shares of stock, still in the hands of the executors, in which James B. Colt had a life estate, and so far as any of said residuary stock and the accumulations thereon rightfully belonging to them, under a proper construction of the will, had been transferred to the executors personally or distributed to others, parties defendant to the bill, that the equities between them should be adjusted by the court so as to make good and restore to them the amount of stock rightfully belonging to them under the will and codicils, with the accumulations thereon ; and this they claimed to be such proportion of the

entire original residuary stock as the five hundred shares given them in the codicil bears to the whole amount of other legacies given in said will and codicils, and such proportion of the 574$\frac{24}{31}$ shares which the executors held, subject to the life estate of James B. Colt, deceased, and now for distribution, upon the basis of their right therein as owners of the 500 shares, and of the 100 shares each, given them in the will, making 900 shares in all.

Referring to the proceedings and decrees of the Superior Court and Supreme Court of Errors of Connecticut, the bill insisted that the complainants were not bound or barred thereby, for these reasons:

1. Because they were minors under the age of twenty-one years, not represented by a guardian *ad litem*, their general guardian, although made a party for that purpose, having no power or authority to represent them.

2. Because the question as to their rights in respect of the legacy of five hundred shares given to the executors in trust for them, could not be considered or passed upon, until the period of payment and division, when the youngest became of age.

3. Because the said Elizabeth Hart Colt, Richard D. Hubbard, and Richard W. H. Jarvis, trustees, under the will and codicil for them, were not summoned to appear in said proceedings in their capacity as said trustees, and entered no appearance, in that capacity, in their behalf, and employed no counsel to appear in their behalf as such trustees, and no issues were made up by said trustees, involving the rights and interests of the children in and to the residuary stock.

4. Because, if the appearance of said persons, as executors, is deemed to be equivalent to their appearance as trustees, they in fact opposed and did not maintain the claim of the complainants, as they should have done.

5. Because Mrs. Theodora G. Colt, on account of her inexperience and ignorance of such matters, and her belief that the executors were charged with the duty of defending the rights of the children, and were doing so, neglected to employ counsel on their behalf to protect their interests.

For similar reasons the complainants also claimed that the settlements with the executors and trustees, by them, and in the Probate Court, were not conclusive; and prayed for an account and a transfer to them of the stock which they were entitled to under the will and codicils, with the accumulations thereon, and for general relief.

The case was put at issue by answers and replications, and was heard upon pleadings and proofs; the final decree, brought here by this appeal, denying all relief to the complainants, *Colt v. Colt*, 19 Blatchford, 399, to whom, however, was awarded the same proportion of the 574$\frac{26}{31}$ shares, now fallen into the residuum for ultimate distribution by the death of James B. Colt, to that given to them in the residuum distributed by the decree of the Superior Court of Connecticut, viz., to each of the complainants, $\frac{100}{4150}$ of the said 574$\frac{26}{31}$ shares. The decree declared:

"That the said plaintiffs, LeBaron B. Colt, Samuel P. Colt, Theodora G. Colt, assignee, Frank E. DeWolf, and Isabella D. W. Colt DeWolf, are not entitled to any other or further interest in the estate of said Samuel Colt, as claimed in and by their said bill of complaint, than their above proportions of said 574$\frac{26}{31}$ shares of said stock and dividends, under the said will of said Samuel Colt.

"That especially the said plaintiffs are not entitled to any residuary stock of said company, or dividends thereon, under said will by virtue of the gift of five hundred shares of stock, as prayed in said bill, or to any interest in the dividends made upon the said 574$\frac{26}{31}$ shares, which accrued during the life of said James B. Colt."

*Mr. L. C. Ashley* and *Mr. Benjamin F. Thurston* discussed the construction of the will and codicils, claiming that these questions were open: but in view of the opinion of the court only their points and authorities upon the force of the judgment in the State court are given. They contended that the trustees were not parties, as such, in the Connecticut case. They were (1) executors; (2) legatees; (3) trustees for minors; and were made parties to that suit only in the first and second

capacities. This is shown by their answer, in which they denied the title of the *cestuis*, which as trustees they could not have done. Story Eq. Jur. § 1275; *Williams* v. *Gibbs*, 20 How. 535. The trustees, as such, were absent from that suit, and no binding adjudication could take place. Estoppels must be mutual. Freeman on Judgments, §§ 154, 159; 1 Green. Ev. § 524, 2d ed.; *Simpson* v. *Pearson*, 31 Ind. 1; *Bradford* v. *Bradford*, 5 Conn. 127; *Wood* v. *Davis*, 7 Cranch, 271. The capacities of executors and trustees are distinct. *Wheatly* v. *Badger*, 7 Penn. St. 459; 1 Perry on Trusts, § 281, 2d ed.; *Parsons* v. *Lyman*, 5 Blatchford, 170; *Judson* v. *Gibbons*, 5 Wend. 224, 228; *Sims* v. *Lively*, 14 B. Mon. 433; *Williams* v. *Cushing*, 34 Maine, 370; *Perkins* v. *Lewis*, 41 Ala. 649; *Hayes* v. *Hayes*, 48 N. H. 219. Where different rights meet in the same person, they are to be treated as if they were different persons. *Ross* v. *Barclay*, 18 Penn. St. 179; *Conklin* v. *Edgerton's Adm.*, 21 Wend. 430; *Dominick* v. *Michael*, 4 Sandf. Sup. Ct. 374; *Dunning* v. *Ocean Bank*, 61 N. Y. 497. When the same persons are appointed trustees and executors of a will, a revocation or declination of their appointment as executors is not necessarily a revocation or declination of their appointment as trustees. This shows that the capacities are distinct. 3 Williams on Executors, 6th Am. ed. 1894, note h.; *Graham* v. *Graham*, 16 Beav. 550; *Cartwright* v. *Shepheard*, 17 Beav. 301; *Williams* v. *Cushing*, above cited; *Dunning* v. *Ocean Bank*, above cited; *Sheet's Estate*, 52 Penn. St. 257; *Garner* v. *Dowling*, 11 Heisk. 48. The trustees did not appear in the Connecticut suit in the same right in which they appear here. A party acting in one right can neither be benefited nor injured by a judgment for or against him when acting in some other right. Freeman on Judgments, § 156 and cases cited; Bigelow on Estoppel, 65, 2d ed.; *Robinson's Case*, 3 Rep. part V. 33 b; *Plant* v. *McEwen*, 4 Conn. 544; *Hollister* v. *Lefevre*, 35 Conn. 456; Wells on Res Adjudicata and Stare Decisis, § 21; *Leggett* v. *Great Northern Railway*, 1 L. R. Q. B. Div. 599; *Stoops* v. *Wood*, 45 Cal. 439; *Lewis* v. *Smith*, 11 Barb. 152. Trustees of an express trust are the real parties in interest in a suit affecting the trust property. *Western Railroad*

*Company* v. *Nolan*, 48 N. Y. 513; *Trustees of M. E. Church v. Stewart*, 27 Barb. 553; *Goddard* v. *Prentice*, 17 Conn. 546. Trustees and the *cestuis que trust* are independent and proceedings against one have no effect against the other. Both are essential to a complete determination of any action in reference to the trust estate. Freeman on Judgments, § 173; *Johnson v. Rankin*, 2 Bibb, 184; *Paton* v. *Murray*, 6 Paige Ch. 474; *Phipps* v. *Tarpley*, 24 Miss. 597; *Platt* v. *Oliver*, 2 McLean, 267; *McRea* v. *Branch Bank of Alabama*, 19 How. 376; *Caldwell* v. *Taggart*, 4 Pet. 190; *Rooke* v. *Kensington*, 39 Eng. L. & E. 76; *In re Chertsey Market*, 6 Price, 261, 278; *Jones* v. *Jones*, 3 Atk. 110; Perry on Trusts, § 873; *Wood* v. *Williams*, 4 Mad. 186; *Cope* v. *Parry*, 2 Jac. & W. 538; *Cassidy* v. *McDaniel*, 8 B. Mon. 519; *Upham* v. *Brooks*, 2 Story, 623. The trustees cannot take any other position in replying to this bill than that above stated. If they were in any sense parties and actors as trustees in the Connecticut suit, their opposition to the trust title and the rights of the *cestuis* was a constructive fraud, and good ground for restraining them from using the judgment as a defence here. The jurisdiction of Courts of Chancery to set aside decrees obtained by fraud on an original bill filed for that purpose is unquestioned. Freeman on Judgments, § 486; *Wright* v. *Miller*, 1 Sand. Ch. 103; *Pearce* v. *Olney*, 20 Conn. 544; *Dobson* v. *Pearce*, 2 Kernan, 156. Trustees cannot submit to a judgment so as to bind the trust estate. Freeman on Judgments, § 545; *Mallory* v. *Clark*, 20 How. Pr. 418; *Marks* v. *Reynolds*, 12 Abb. Pr. O. S. 403; Bigelow on Fraud, 174; *Story* v. *Norwich & Worcester Railroad Company*, 24 Conn. 113. If the trustees were in any sense parties to the Connecticut suit, the trial was had under the influence of mistake, surprise, and accident, and the complainants should be relieved therefrom, and the case be decided on its merits.

*Mr. Charles E. Perkins* and *Mr. Alvan P. Hyde* for appellees.

Mr. Justice MATTHEWS delivered the opinion of the court. He stated the facts in the foregoing language, and continued:

The first inquiry upon this appeal manifestly is, as to the effect to be given in this suit to the decree of the Superior Court of Connecticut; for, if as set up and claimed by the appellees, it is an estoppel by record, the matter of the bill is *res judicata*, and we cannot open it.

And in considering the grounds on which it is sought to repel the bar of this decree, we must disregard at once all that do not attack the jurisdiction of the court over the cause or the parties. It cannot be assailed collaterally for mere error. It follows, therefore, that we cannot notice the allegation that appellants were minor defendants, for whom a general guardian only, and not a guardian *ad litem*, appeared to defend; for the infants, having been properly served, were before the court, and are bound by its action, even if erroneous; the failure to appoint a guardian *ad litem*, at most, is error merely, and does not defeat the jurisdiction.

What was the proper method of proceeding against defendants, whether by general guardian or guardian *ad litem*, is a question local to the law of the jurisdiction, and, in the proceeding under review, was passed on by the State court. It found in the decree that "the said minors were duly represented by their guardians," and that finding cannot be questioned collaterally, as it is not a question of jurisdiction. *Coit* v. *Haven*, 30 Conn. 190; *Christmas* v. *Russell*, 5 Wall. 290; *Thompson* v. *Whitman*, 18 Wall. 457.

It seems to be in accordance with the general practice in Connecticut for a general guardian to be made a party and to defend for his ward, and that, in such cases, the appointment and appearance of a guardian *ad litem* are not necessary. Reeves' Domestic Relations, 267; 1 Swift's System, 217; 1 Swift's Digest, 61; *Wilford* v. *Grant*, Kirby, 114.

We dismiss, also, without further remark, those grounds of objection which seem to proceed upon some supposed breach of duty or trust on the part of the executors and general guardian in not making proper defence. The bill does not charge any such breach of trust, or seek relief on that ground; and any suggestions of that character cannot affect the integrity and effect of the decree of the Superior Court.

The objection that no question could be passed upon in that case affecting the rights of the complainants to the interest claimed by them in the residuary stock, because the time for the actual enjoyment of the legacy was postponed by the will until the youngest attained the age of majority, is equally untenable and has not been insisted upon. The interest was vested, and the question of distribution in right, if not in possession, was before the court.

This leaves, as the single ground on which the estoppel is opposed, that the executors, who by the will were trustees of the 500 shares bequeathed to the complainants, were not parties to the cause, nor before the court in their capacity as trustees, but only as executors; that, consequently, the title and estate held by them as trustees were not represented by any one competent to do so, and that, consequently, the decree, not binding the legal title of the trust estate, cannot operate upon the beneficial interest of the *cestuis que trust.*

This argument proceeds upon the assumption that, by the terms of the will, the natural persons who were appointed as executors of the will were also, but with a distinct title, made trustees for the appellant of the legacies given for their benefit; that there was vested in these trustees a separate and independent legal title and estate in the subject of the legacies, as much so as if they had been different natural persons; that that title and estate could not be affected by any judicial proceedings to which they were not parties as such trustees; and that the beneficial interest of the appellants is equally protected, as it was for that very purpose that the legal estate was vested in others as their trustees; and that consequently the decree set up as an estoppel is not an adjudication between the same parties as are now before the court in the present suit.

The language of the original bequest of the five hundred shares of stock is: "I also give and bequeath to my executors and their successors in said office," . . . "in trust for the issue of said James B. Colt, lawfully begotten, the profits and dividends thereof to be applied to the education of his said issue, so far as the same may be necessary for that purpose, until the youngest surviving of said issue shall have

reached the age of twenty-one years, when said stock and all accumulations thereof, if any, shall go to said issue, in equal proportions, as an absolute estate." And the codicil, which revokes that bequest, gives the same property "to the other children of my said brother." . . . "to have and to hold to said other children of the said Christopher in equal proportions. This last bequest is in trust for said children, and the property hereby bequeathed is to be held by my said executors for said children in the same manner and subject to the same limitations as are provided in said original will in the bequest to the children of the said James B. Colt," &c:

We have no difficulty, notwithstanding the language of this bequest, giving the property, in the first instance, directly to the children, in holding, that it creates a trust for their benefit; but we have as little in holding, both as to it and the original bequest which it displaced, that the trust constituted was vested in the executors, in their official capacity as such, so that in case one or all of them had at any time ceased to be executors, he or they would, at the same time, have ceased to be trustees; and that in case a vacancy in the office of either of the executors had occurred and been filled, as provided in the will, by the appointment of a successor by the remaining executors, the trust would have devolved upon the new executors, *virtute officii,* so that the executors for the time being would always be the trustees, and so that whatever in their official capacity, as executors, they did in respect to the subject of this legacy, is to be imputed to them also in their character as trustees, and equally affected and bound the trust and its beneficiaries. The five hundred shares came into their hands as executors. It remained there for the general trusts of the administration of the estate until they were fully served. The possession of them, thereafter, the law imputed to them still as executors, but in trust for the special purposes, to which by the will they were appropriated. There was no change of possession; there was no change of the legal title; there was but a succession of uses, according to the terms of the will. They continued to hold this stock as executors, although in trust, until its actual payment to the legatees.

In the original bequest to the children of Christopher Colt in the will, of annuities for education and support during minority, and one hundred shares of stock payable on arriving at age, there are no words creating a trust; and yet the executors, in the mean time, were bound to them, in respect to these benefits and interests as executors, and yet in trust, quite as much as they were, in respect to the five hundred shares, by the words of that bequest.

As long as personal property is held by executors as part of the estate of the testator, for the payment of debts or legacies, or as a residuum to be distributed, they hold it by virtue of their office and are accountable for it as executors; that liability only ceases when it has been taken out of the estate of the testator and appropriated to and made the property of the *cestui que trust*. *Bond* v. *Graham*, 1 Hare, 482, 484; *Arthur* v. *Hughes*, 4 Beav. 506; *Penney* v. *Watts*, 2 Phillips ch. 149, 153; *Hall* v. *Cushing*, 9 Pick. 395; *Dorr* v. *Wainwright*, 13 Pick. 328; *Towne* v. *Ammidown*, 20 Pick. 535, 540; *Newcomb* v. *Williams* 9 Metc. (Mass.) 525; *Conkey* v. *Dickinson*, 13 Metc. (Mass.) 51; *Prior* v. *Talbot*, 10 Cush. 1; *Miller* v. *Congdon*, 14 Gray, 114; Adams on Equity, 251. "And it may be here observed," says Williams on Executors, 1796, pt. 4, bk. 2, ch. 2, sec. 2, "that when personal property is bequeathed to executors, as trustees, the circumstance of taking probate of the will is, in itself, an acceptance of the particular trusts. Therefore, where the will contains express directions what the executors are to do, an executor, who proves the will, must do all which he is directed to do as executor, and he cannot say, that though executor, he is not clothed with any of those trusts." Lewin on Trusts, 156.

But in whatsoever sense the executors were trustees for the appellants, what was the subject and scope of their trust, and of their duties as trustees? It embraced, it will be said, the 500 shares of stock bequeathed by the codicil. In respect to that their duties were defined. They were to hold it, collect the profits and dividends, and apply them to the education of the children while under age, and divide and pay it to them when they attained their majority. And in any litigation, in-

volving the title or possession of that specific stock, which had been segregated from the body of the estate and appropriated to the uses of the trust, it might well be that the executors, in their distinct capacity as such trustees, were necessary parties, bound to protect the trust estate and property, without whose presence any judicial determination would be nugatory. How far in such a case their presence as parties is formal for the mere purpose of binding the legal title, or how far it is essential so as to impose upon them the active duty of defence, must depend upon the nature and terms of the trust, and the circumstances of particular cases. Mr. Calvert, in his work on Parties, p. 283, says: " The general inference to be derived from those cases, in which strangers file bills adversely to property held in trust, is that the *cestuis que trust* are necessary parties, and ought to have an opportunity of appearing in defence of their rights. Indeed, that it is the main duty of trustees of these cases to take care that all the *cestuis que trust* are before the court; this duty performed, they may abstain from taking part in the argument, and leave the *cestuis que trust* to carry on the contest." *Holland* v. *Baker*, 3 Hare, 73.

But the trust supposed did not extend to whatever else under the will the beneficiaries chose to claim; it certainly did not extend to the residuary stock at that time undistributed. That was still in the hands of the executors, as such; and in respect to it, they were under no duty to the appellants, other than that which they owed to all other legatees claiming an interest in it. They could not with propriety take part with one against another, for of that they were trustees for all who by law were entitled to share in it. The most that could be required of them, would be that, upon every question involved in the distribution, opportunity should be given for each legatee to obtain the judgment of the court upon his claims. It would have been competent and quite proper for the executors, when James B. Colt preferred his claim to share in the residuary stock, to have filed a bill in equity to obtain a construction of the will and the advice of the court. In that, they would have been complainants, as executors. They would have made all other legatees and distributees, or these claiming to be entitled

as such, parties defendant. They could not make themselves defendants as trustees; and they could not file the bill as complainants in a double character and for different purposes, and represent inconsistent interests; although they could, as executors and complainants, set forth whatever case existed, with all its questions and claims, in which they might have inconsistent interests, officially and personally, bringing themselves before the court in every character in which they had an interest to assert or defend, and all others beneficially interested in the subject matter of the controversy. Their duty would have been, in such a case, fully discharged, if, as was done by James B. Colt, in the proceedings in question, the appellants had been summoned with their guardian, and, upon a fair statement of the case, their interests had been placed under the protection of the court, acting according to the forms of equity procedure. Nothing more could be required, as nothing more was needed for effectually securing the substantial justice of a full and fair hearing and determination for each party in his own right.

In the case as it was made they were present as executors of the will, having possession of the undistributed residuum of stock, asking the court for its judgment whether they should hold any part of it, and if any, how much as trustees for the appellants, all parties in interest being before the court and heard, or with the opportunity to be heard; in the case of the appellants, by guardian and counsel. The subject matter of the litigation was not any trust estate in property held by the executors for the appellants. It was the residuary stock, and the respective rights and interests of all the legatees in its distribution. The executors were not trustees for the appellants of their claim to share in this residuum in the sense of being bound to assert it adversely to all others, for whom equally they were trustees of the residuum, although that claim was founded on the interest of the appellants in the 500 shares which the executors did hold for them in trust. The very question was whether they had a corresponding interest in the residuum. If it should be judicially determined that they had, then, too, that interest would be held thereafter by the executors for them in trust as the other shares. But no such

trust could arise until their right was established. And the executors were not bound, as against other legatees, to assume the burden of establishing its existence; much less were they at liberty to assume its existence before it was established. Their duty, both as trustees and executors, was fully performed when they invoked the judgment of the court, in the proceeding as framed, in the presence of all the parties beneficially interested. They were present also as executors, and therefore as trustees, so far as the determination and judgment of the court might render that necessary or important; for if that judgment had sustained the claim of the appellants it would have been a decree that the executors should hold the share of the residuary stock awarded to them in trust for them according to the terms of the will. It was, however, the other way, and declared that as to the matter in dispute the executors were not their trustees. That judgment, pronounced and acted upon, in our opinion, is conclusive as an adjudication in the present litigation, and precludes inquiry into the merits of the original claims and questions which it was intended to adjust and end.

For that reason

*The decree of the Circuit Court is affirmed.*