## MARFIELD *v.* McMURDY.

---

WILLS; ADMINISTRATION; EXECUTORS' COMPENSATION.

1. An appeal was entertained by this court although there were no formal assignments of error as required by its rules, where the decree appealed from enumerated the questions that were decided by the court below, and the record showed what questions were decided, and appellant's brief, at the beginning of what was called the argument, specifically stated what the questions to be determined were.

2. An executor continues to be such as long as he has anything under the will to execute, although the period of administration may be past; the principal difference between an executor during the period of administration and an executor after the lapse of that period being that the former is responsible to the probate court, and the latter to a court of equity. At both times he is equally a trustee and equally an executor.

3. Where a will provides that the executor shall receive in lieu of commissions a given sum annually during the time he acts as such, and it is evident from the whole scheme of the will that the testator contemplated that the executorship should last for several years, certainly until the death or remarriage of the testator's widow, the right of the executor to receive such annual compensation will continue beyond the period of administration, that is, twelve or thirteen months, if his duties continue beyond that time. A court of equity affords abundant remedy to prevent an undue and improper prolongation of an executorship.

4. Where a will provides that out of the income generally of the estate the executor shall receive compensation at the rate of so much a year in

lieu of commissions, if the income is less in one year and greater in another the deficiency of compensation in one year may be made up by the excess in other years,—especially where there are no provisions of the will that will fail in the event that the executor receives all the compensation that was intended for him, although there may be less of income to be distributed. The rule might be different if the will limited the payment of the executor's annual compensation to the annual income of the estate.

5. Where, under a will, the testator's widow is entitled to one third of the net income of the estate during her life, or until her remarriage, she is entitled to have the estate kept intact for the purpose of receiving such part; and the executor of the estate cannot, at the instance of a remainderman, be compelled to sell the estate upon the giving to the life tenant of "satisfactory assurance" of the payment to her of her portion of the income.

6. Where a testator, in an inartificially drawn codicil intended to take the place of a certain item of the will, provided that "in case my property on 14th street, in the city, is not sold before my death, and in the opinion of my executors it is desirable; after using the interest on my Dayton property to pay all taxes, the balance, except $1,500, shall be distributed equally between my wife and my two children, and the other $1,500 shall be invested as a part of the principal of my estate; this is to apply to all the Dayton notes as they fall due;" and ample authority was given for the sale of the 14th street property by another item of the will; and it was evident that it was not the purpose of the testator anywhere to direct a distribution of his estate, except to a very limited extent,—it was *held* that it was the purpose of the codicil to provide for the application of the so-called Dayton notes, in the event that the 14th street lots should not be sold before the testator's death, and not to provide for the sale of the 14th street lots.

No. 1503. Submitted March 22, 1905. Decided April 4, 1905.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia in a suit in equity for an accounting by an executor and for other purposes.

*Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from a decree of the supreme court of the District of Columbia sitting in equity.

One Robert McMurdy, a resident of the District, died herein on March 17, 1892, leaving a will, which was duly admitted to probate, whereby he devised property, both real and personal. Subsequently to the execution of the will, he made a codicil to it, which purported to change one clause or item of the will, and to substitute another disposition in the place of it. He left a widow surviving him, who was his wife by a second marriage, Helen Becker McMurdy; and two children by a former marriage, the appellant, Agnes E. Marfield, a widow, and the appellee, Robert H. McMurdy. The son, Robert H. McMurdy, and the widow, Helen Becker McMurdy, were constituted executors of the will; but the widow afterwards renounced the executorship, and Robert H. McMurdy alone qualified as executor, and yet remains in the execution of the trust.

In the will, after some provision for two grandchildren, who were the children of a deceased son, and after the bequest of a legacy of $6,000 to his daughter, the appellant, the testator makes this provision, which comes up for construction in the present case:

"Item 5. I give to my son, Robert H. McMurdy, of Chicago, Illinois, out of the income of my estate, the sum of $600 annually during the time that he acts as executor of this will, in full compensation for his services as such executor."

Item 6 of the will contained a devise of his residence near Takoma, in this District, together with some adjacent lots, to his wife for her natural life or until remarriage, with some provision for its management and a certain disposition of it after the termination of the estate so limited to the wife. It is this clause of the will that was revoked by the codicil, which substituted in the place of it the following:

"Item 6. I devise & bequeath to my wife, Helen Becker McMurdy, the undisturbed use of my present residence in Takoma, D. C., to maintain, together with the lot on which said residence now stands, at her own expense, including taxes & assessments on said real estate, so long as she shall remain unmarried and during her natural life, unless she remarries before the end thereof. This devise does not include any part of the adjoin-

ing lot, of which the south 7 feet were reserved in the former will. Said property may be sold by my executors at the request of my said wife, and the proceeds thereof (less $3,000) invested & the income therefrom paid to her annually during her natural life unless she remarries; in which case her interest in said property shall cease.

"As the mortgage of three thousand has been canceled by funds from the general estate, I direct, when the property is sold, that $3,000 of the purchase money shall be invested for the benefit of the heirs of my estate.

"In case my property on 14 St. in the city is not sold before my death & in the opinion of my executors it is desirable; after using the interest on my Dayton property to pay all taxes, the balance, except $1,500, shall be distributed equally between my wife & my two children & the other $1,500 shall be invested as a part of the principal of my estate. This is to apply to all the Dayton notes as they fall due."

Item 8 of the will was as follows:

"Item 8. After the payment of the necessary expenses of administration, care and expenses of property, taxes, executor's salary, and other expenses connected with the execution of this will and its several provisions, the income of my estate, real and personal, I devise and bequeath to said Agnes Marfield and Robert H. McMurdy, my children aforesaid, their heirs and assigns, and to said Helen Becker McMurdy, my said wife, in equal parts, one third part thereof to each, to be paid annually."

Item 9 devised the remainder of the estate, after the death or remarriage of his wife, to his two children, Agnes Marfield and Robert H. McMurdy. Item 10 provided that the devise and bequest to his wife should be in lieu of dower; and item 11 provided that his executors should have full power to convey and exchange his estate and reinvest the proceeds; and it named his son, Robert H. McMurdy, and his wife, Helen Becker McMurdy, as the executors of the will, without bond or liability to account in any manner. In the event of the death of Robert H. McMurdy before the testator, the daughter was appointed coexecutor with the wife.

These are all the parts of the will and codicil that are deemed pertinent to the issues in the present case. It should be added, perhaps, that it would appear that the testator had legal assistance in drawing the will, but that the codicil was his òwn unaided effort. It should also be added, as appears in the proceedings in the present case, that the testator owned some unimproved lots, known as the Columbian University lòts, and mentioned in the codicil as the "pròperty on Fourteenth street, in this city," and which, it seems, was valued at one time at about $30,000 or $40,000; and that he had also owned some unimproved lots in Dayton, Ohio, which he had sold and upon which he had taken a mortgage and mortgage notes amounting to about $15,000. These are the "Dayton property" and "Dayton notes" referred to in the codicil. It appears that it was impossible for a long time to sell the Fourteenth street lots, and that they were finally sold for about $28,000, of which part was reserved on mortgage; and also that, on account of the insolvency of the purchaser of the Dayton lots, the executor found himself constrained to take back that property and to surrender the purchasers' notes to him.

On May 6, 1901, the present proceedings were commenced by the appellant, Agnes E. Marfield, as complainant, in the supreme court of the District, by filing her bill in equity against Robert H. McMurdy, the widow, Helen Becker McMurdy, and John H. McMurdy, a legatee under the will, but who is not concerned with the proceedings as they now stand. In this bill there were some charges of misfeasance and malfeasance on the part of the executor Robert H. McMurdy, which met with an emphatic denial from the latter, and all of which have been withdrawn or abandoned; and the prayer of the bill was for an accounting by the executor, for his removal as executor and trustee, for the removal of Helen Becker McMurdy from the trust, and for the appointment of the Washington Loan & Trust Company in their place and stead, to sell all the property of the estate in the District of Columbia and to divide the proceeds between the appellant and the appellee "upon their giving to the said Helen Becker McMurdy or to this court (the supreme

court of the District) satisfactory assurances of the payment
annually to said Helen Becker McMurdy during her natural
life, or until she remarry, of a sum equal to one third of the
annual interest at a reasonable rate accruing upon the amount
so paid to said complainant and defendant Robert H. McMurdy
from the proceeds of sale of said property."

There was no request for any construction of the will or
codicil, and no suggestion that either of them needed construc-
tion.

Helen Becker McMurdy did not answer the bill, and per-
mitted it to go by default; and she subsequently renounced the
trust both of executrix and of trustee. She is not a party to this
appeal.

Robert H. McMurdy answered vigorously, denied all mal-
feasance and misfeasance, and gave a full and elaborate account
of his trust.

Thereupon, on January 25, 1902, a consent decree was ren-
dered, wherein it was adjudged and decreed that all objections
and exceptions to the action of Robert H. McMurdy as trustee
be overruled; that the Washington Loan & Trust Company be
appointed cotrustee with him in the place of Helen Becker Mc-
Murdy; that, as soon as it could well be done without sacrifice,
the trustees should sell the so-called Columbian University lots,
on Fourteenth street, and all the other property of the testator
in the District of Columbia, under the approval of the court;
and that they should hold the proceeds subject to the further
order of the court. And there was this further order included
in the decree: "It is further ordered that the question of com-
pensation to the said Robert H. McMurdy under the provisions
of said will, and the rights of the legatees under the said will
to the proceeds of said real estate, are hereby reserved by the
court to be passed upon when there shall be funds arising from
the sales aforesaid in the hands of the trustees."

There was then an accounting before the auditor by Robert
H. McMurdy, and his account was accepted and approved by
all parties, and ratified by the court. It covered the period
down to January 25, 1902, and showed a balance in his hands

at that date of $607.74, which he turned over to himself and his associate as the existing trustees. The order of ratification reserved to the complainant the right to contest his claim to compensation as executor and trustee.

The next proceeding that appears in the present record is the stipulation entered into on May 12, 1904, and filed in the cause on October 27, 1904, which was executed by Robert H. McMurdy in person, and by the solicitor for the complainant and the solicitor for the Washington Loan & Trust Company, and wherein it was agreed that the questions reserved by the decree of January 25, 1902, should now be submitted to the court for its determination upon the record and certain conceded facts. These facts were the following:

1. That the Columbian University lots had been sold for $28,710, out of which, after payment of sundry expenses, there remained in the hands of the trustees between $1,000 and $1,500 in cash, and promissory notes amounting to $19,647.-47, drawing 5 per cent interest payable semiannually.

2. That the annual charges upon the estate in the hands of the trustees, without reference to the compensation claimed by Robert H. McMurdy, are less than the amount of the income of the estate.

3. That no compensation had been received by Robert H. McMurdy beyond the sum of $694.15 found by the auditor's report.

And in the stipulation the questions reserved for determination by the court are specifically formulated in these terms:

(1) Whether, under the provisions of said will, said Robert H. McMurdy is entitled to any, and, if any, what compensation over and above the sum of $694.15 already received by him, as shown by said auditor's report, and from what fund or funds the same shall be payable.

(2) Whether it is the duty of the trustees, or within their power, to divide the proceeds now in their hands of the sale of the University Park property in the District of Columbia, between the said Robert H. McMurdy and Agnes E. Marfield.

Thereupon the court rendered the following decree: "Said

questions having now been presented to the court upon said stipulation and the papers therein referred to, and counsel for the respective parties having been heard, and said second question having been treated in argument as if it embraced Helen Becker McMurdy as one of the proposed distributees, which counsel for the complainant insist was the intention of the stipulation, and the court having duly considered the matter, it is this 8th day of November, 1904, adjudged, ordered, and decreed:

"1. That the said Robert H. McMurdy is entitled to compensation under the provisions of the will of said Robert McMurdy, deceased, at the rate of $600 per annum, payable out of the income of said estate until the final distribution of the said estate, or until breach or determination of the trust reposed in him.

"2. That there be paid to said Robert H. McMurdy out of any excess of income now or hereafter arising or existing over the annual charges upon said estate other than said compensation and arrearages, so much as may be necessary and so far as the same will extend to pay:

"(a) All arrearages of said compensation now existing or hereafter arising.

"(b) Said compensation at the rate of $600 per annum until the final distribution of the said estate, or until the breach or determination of his trust.

"3. That, after the payment of such arrearages and annual compensation, the balance of the income, if any, from time to time arising, be disposed of according to the provisions of the will of said Robert McMurdy, deceased.

"4. It is further adjudged, ordered, and decreed that it is not the duty of the executors or trustees of the will of Robert McMurdy, deceased, under any of the provisions of said will or of the codicil thereto, nor have the said executors or trustees any power or authority thereunder, to divide the proceeds, now in their hands, of the sale of the University Park property in the District of Columbia, between Robert H. McMurdy and Agnes E. Marfield, or to make any distribution whatever of the pro-

ceeds of said sale, or of any other part of the corpus of said estate now being or hereafter coming into their hands, among the beneficiaries named in said will and codicil, until the death or remarriage of Helen Becker McMurdy, widow of said testator.

"This decree is made without any prejudice to any questions which may hereafter arise touching the commissions of the Washington Loan & Trust Company as executor or trustee under said will."

From this decree the complainant has appealed to this court.

*Mr. James A. Tawney, Mr. Smith Thompson, Jr.,* and *Mr. Charles T. Hendler* for the appellant.

*Mr. Clarence R. Wilson* and *Mr. William E. Church* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

There are no assignments of error by the appellant, and therefore, under a strict construction of the rules of this court, the appeal should be dismissed. But in the appellant's brief, at the beginning of what is called the argument, there is a statement that "the questions to be determined are: (1) Is the trustee Robert H. McMurdy entitled to the sum of $600 per annum out of the income of the estate until the final distribution thereof? (2) Should the said trustee, Robert H. McMurdy, be paid all arrearages of said compensation now existing or hereafter arising out of any excess of income now or hereafter arising or existing over the annual charges upon said estate? (3) Should the proceeds of the sale of lots 12 and 13, in block 43, now in the hands of the trustees, be distributed equally to the widow and children of the testator?" And inasmuch as the decree appealed from itself enumerates the questions that were decided by the court below, and there is no doubt upon the record as to what questions were actually involved and what questions were decided, we think that, under the circumstances of this case,

the questions so formulated may be taken as the equivalent of formal assignments of error.

1. The first question is whether the executor, Robert H. Mc-Murdy, is entitled to the sum of $600 per annum out of the income of the estate until the final distribution thereof.

The answer to this question is not difficult. The will expressly provides for such compensation. The provision is that out of the income of the estate Robert H. McMurdy, the son of the testator, should receive the sum of $600 annually; that is, the sum of $600 for each and every year during the time that he acts as executor of the will, in full compensation for his services as such executor; and it is evident from the whole scheme of the will that the testator contemplated that the executorship should last for several years, certainly until the death or remarriage of his widow. The argument of the appellant, in opposition to this, is that the executorship, properly so called, ceased at the termination of the period of administration, that is, in about twelve or thirteen months after the issue of letters testamentary and the settlement of account or the lapse of the time for such settlement in the probate court; and that thereafter the appellee held the estate as trustee, with compensation, if any, dependent upon a court of equity. But this is an argument based upon words, not upon substantial things. The executor does not cease to be executor because the period of administration, so called, may be passed. He is still executor as long as he has anything under the will to execute. He is just as much a trustee during the period of administration as after it. Every executor, administrator, guardian, receiver, assignee, and other person or persons acting in a fiduciary capacity, is a trustee; and the only difference, at all events, the principal difference, between an executor during the period of administration and an executor after the lapse of the period of administration, is that the former is responsible to the probate court for the faithful execution of his trust, the latter to a court of equity. He is equally a trustee at both times, and equally an executor; and it is very clear from the testator's will that, by whatever title he should be designated, the executor should have a compen-

sation of $600 a year for each and every year during which he should continue to be engaged in the execution of the will.

It is not to the point that this construction would offer a premium to executors to strive for the indefinite prolongation of their executorship. To meet any such effort a court of equity affords abundant remedy.

If authorities are needed to sustain a proposition which seems to us to be very plain, several will be found cited in the brief for the appellee, and there are none to the contrary. See *Colt* v. *Colt,* 111 U. S. 579, 28 L. ed. 525, 4 Sup. Ct. Rep. 553; *Mc-Burney* v. *Carson,* 99 U. S. 572, 25 L. ed. 382; *Dorr* v. *Wain-wright,* 13 Pick. 328; *Saunderson* v. *Stearns,* 6 Mass. 37.

In the case of *Colt* v. *Colt* the Supreme Court of the United States said:

"The 500 shares of stock came into their hands as executors. It remained there for the general trusts of the administration of the estate until they were fully served. The possession of them thereafter the law imputed to them still as executors, but in trust for the special purposes to which by the will they were appropriated. There was no change of possession; there was no change of the legal title; there was but a succession of uses according to the terms of the will. They continued to hold this stock as executors, although in trust, until its actual payment to the legatees. * * * As long as personal property is held by executors, as part of the estate of the testator, for the payment of debts or legacies or as a residuum to be distributed, they hold it by virtue of their office and are accountable for it as executors; that liability only ceases when it has been taken out of the estate of the testator and appropriated to and made the property of the *cestui que trust.*"

It will be found upon examination of them, although some incautious expressions are used, that the cases cited on behalf of the appellant do not at all contravene this doctrine. Take, for illustration, the case of *Conner* v. *Ogle,* 4 Md. Ch. 425, where it is said that "where the same person is both trustee and executor under a will, and settles up the personal estate in the orphans' court, the balance, after such settlement, remains in his

hands as trustee, and not as executor." The context plainly shows that the meaning is that the executor no longer holds the property for administration in the orphans' court, but as a trustee responsible to a court of equity. And a like explanation holds of the other cases cited. *State* v. *Cheston,* 51 Md. 377; *Hanson* v. *Worthington,* 12 Md. 418; *Seegar* v. *State,* 6 Harr. & J. 164, 14 Am. Dec. 265, and *Drury* v. *Natick,* 10 Allen, 174.

2. The appellant has divided the first question determined in the court below into two, and makes this the second of her questions: "Should the trustee be paid all the arrearages of said compensation now existing or hereafter arising out of any excess of income now or hereafter arising or existing over the annual charges upon said estate?" But the solution of this question naturally follows the first. The same provision of the will governs both. Had the will limited the payment of executor's annual compensation to the annual income of the estate, a different question might have been presented. But the provision is that out of the income generally, without any limitation, the executor should receive compensation at the rate of $600 a year. Necessarily, if the income is less in one year and greater in another, the deficiency of compensation in one year may be made up by the excess in the other year. *Willson* v. *Tyson,* 61 Md. 575; *Stewart* v. *Chambers,* 2 Sandf. Ch. 382; *Re Chauncey,* 119 N. Y. 85, 7 L. R. A. 361, 23 N. E. 448; *Additon* v. *Smith,* 83 Me. 551, 22 Atl. 470; *Smith* v. *Fellows,* 131 Mass. 20; *Booth* v. *Coulton,* L. R. 5 Ch. 684; *Pitt* v. *Dacre,* L. R. 3 Ch. Div. 295.

To the contrary, on behalf of the appellant are cited the cases of *Sitwell* v. *Bernard,* 6 Ves. Jr. 520, and *Casamayor* v. *Pearson,* 8 Clark & F. 69. We do not regard either of these as adverse to the proposition above stated, and we think that a careful examination of them will so show. Without going at length into such examination here, it must suffice to say that what was held in the case of *Sitwell* v. *Bernard* was that when trustees had been ordered by the will of a testator to expend certain money in the purchase of real estate, and unexpected obstacles arose which postponed such purchase for a long time, the

VOL. XXV.—23.

beneficiaries of the proposed purchase were entitled to interest on the money from the time at which it should have been invested; and that in the case of *Casamayor* v. *Pearson* it was held that where certain property was directed to be sold and the proceeds invested, and certain annuities to be paid out of the income to be derived from such investment and sale of the property, and investment of the proceeds of sale were prevented for a long time by unexpected occurrences, and afterwards such sale and investment were effected, the annuities should be paid only out of the income of the years during which there was income realized, inasmuch as there were other interests also to be provided for equally with those of the annuitants, which must have failed if the annuitants had been allowed for all the years from the beginning. This last case is a peculiar one, and depends upon its own peculiar circumstances, but it is not believed to offer any criterion for the determination of the case now before us. Here there are no provisions of the will that would fail in the event that the trustee received all the compensation that was intended for him. There may be less of income to be distributed, but that does not operate as a failure of any provision of the will.

3. The appellant's third question is not the question that was decided by the court below. The question, as now phrased by the appellant, is whether the proceeds of sale now in the hands of the trustees should be distributed equally to the widow and children of the testator. The question formulated in the stipulation between the parties, and which the court below decided, is whether these proceeds are distributable between the two children of the testator, without any reference to the interest of the widow, which is a very different proposition. It is, perhaps, unimportant in our present consideration of the case how the question is formulated, for the answer in either event must be in the negative.

It would be a plain and palpable violation of the will to divide these proceeds of sale between the appellant and the appellee without reference to the widow's rights. The widow is

entitled to one third part of the net income of the estate during her life, or until her remarriage; and for the purpose of receiving such part she is entitled to have the estate kept intact, as indeed are each of the other parties; and she is not required to have *satisfactory assurances,* whatever they may be, forced upon her, instead of the provision made by the testator, as suggested by the bill of complaint. Nor should the appellee against his will be required to give such *satisfactory assurances.* It is too plain for argument that this question was decided rightly by the court below that further consideration of it is deemed unnecessary.

Assuming, however, that the question as now formulated by the appellant is before us for determination, we think that this question also must be answered in the negative. The appellant's argument assumes that the codicil to the will provided for the sale of the Fourteenth street or University Park lots, and for the distribution of the proceeds of sale equally between the widow and the two children of the testator, with the reservation of two sums of $1,500 each. We do not find that it does so provide or that it repeals any portion of the will, except the item 6, for which it expressly purports to be a substitute.

The codicil is very inartificially drawn and is somewhat obscure in its terms. It is understood to have been the work of the testator himself without legal assistance, and therefore very naturally falls short of the precision which legal advice might have given him. But we find in it no provision for the sale of the Fourteenth street lots. Such provision was unnecessary. The authority had already been given by item 11 of the original will in the most ample manner. The evident purpose of the last clause of the codicil, which is supposed without warrant to give this power of sale and direction for distribution, is to provide for the application of the so-called Dayton notes, in the event that the Fourteenth street lots should not be sold before the testator's death. It cannot reasonably be construed into a provision for the sale of these lots and a distribution of the proceeds of sale, and it was evidently not the intention of the testator anywhere, either in the will or the codicil, to direct a dis-

tribution of his estate, except to a very limited extent, before the death or remarriage of his widow.

From what we have said it follows in our opinion that the decree appealed from is right and just, and that it should be affirmed, with costs.   And it is so ordered.          *Affirmed.*