# HAKE, Guardian, v. STOTTS' EXECUTOR.

1. An executor is bound to the exercise of that ordinary care, skill and diligence which prudent men exercise in the conduct of their own affairs. It is his duty to keep the trust fund separate and apart from his own moneys.

2. An executor cannot be heard to defend against a removal on the ground that his violation of duty has benefited the estate.

3. The requirement that an executor shall give bonds for the faithful performance of his duty, is only one safeguard against waste and mismanagement; the power of removal is another, and legatees are entitled to the protection of both.

4. The fact found that an executor has not acted fraudulently cannot avail him where his mismanagement has all the effects of a fraud.

*Appeal from the District Court of Boulder County.*

THE facts are sufficiently stated in the opinion.

Mr. W. A. HARDENBROOK, for appellant.

Mr. RICHARD H. WHITELEY, for appellee.

ELBERT, C. J. This was a proceeding under section 2854, General Laws, having for its object the revocation of the letters testamentary granted to the appellee, as executor of the estate of Lewis Stotts, deceased. Upon the petition of the appellant, who is guardian of Luella Stotts and Mary Stotts, infant heirs of the deceased, charging waste and mismanagement of the estate, the appellee was summoned by the county court to show cause why such revocation should not be made. The case was removed by appeal to the district court, where it was referred to a referee, and judgment entered upon his findings, denying the prayer of the petition. The petitioner appeals to this court.

The deceased by his will gave all his personal property to his two children, Luella Stotts and Mary Stotts, and directed that it be sold by the executor, at public sale, on six months' credit, on good secured notes, and when any money was collected thereon that it should be loaned at interest to responsible persons, and that the interest as collected should be applied in educating the children; the principal and balance of interest to be divided between the two daughters when the oldest was twenty-one, or when eighteen if then married; the youngest to receive her share when she was twenty-one, or when eighteen, if married. The petition alleges " that the appellee as executor received into his hands assets of said estate upwards of $4,000, and has since received a large amount of interest and profits thereon; that he has wasted and mismanaged the estate in this—that he has mixed the moneys and property of the estate with his own moneys and property; has traded and speculated with said moneys and property of the estate in his own name,

and for his own benefit and profit; has converted some of said moneys and property of said estate unlawfully to his own use; has invested said moneys and property of said estate on insufficient and inadequate rates of interest; that he has not kept proper books of account of his said doings, and has rendered false, fraudulent and untrue accounts and reports to the probate court and county court; has invested some of said funds in his individual name, and not in his capacity as executor, and has otherwise improperly acted, contrary to his duty as executor."

The statute makes "waste or mismanagement" of the estate a cause of removal. An executor is bound to the exercise of that ordinary care, skill and diligence which prudent men exercise in the conduct of their own affairs. Having accepted the duties of an executor, he must perform them. He must use due diligence in the conservation of the estate, and not suffer it to be injured by his neglect. 3 Redfield, Wills, Chap. 16, Sec. 48. He may be guilty of a *devastavit*, not only by a direct abuse, as by spending or consuming, or by converting to his own use the effects of the deceased, but also by such acts of negligence and wrong administration as will disappoint the claimants on the assets. 2 Williams' Ex. 1,630, 1,636.

Respecting the management of the estate, the referee finds "that the said Benjamin L. Stotts has not transacted the business of such estate in a correct business manner, and has not kept such funds belonging to said estate, separate and distinct from his own funds and estate, but has mixed and blended them together, and that said Stotts has not kept strict and accurate book accounts of his transactions with said estate."

This is putting the derelictions of duty of the appellee in their mildest form. The record shows a violation of almost every rule which the law has established, and almost every duty which the law imposes for the preservation of trust funds. By his own testimony it appears that he has mingled the trust moneys with his own, and used it in his private business, dealing in sheep and cattle and horses; that he has deposited in

banks to his own credit, and not to his credit as executor; that he has loaned it, and taken the notes and securities payable to himself individually, and not in his representative capacity; that he has received payment in trade, and rendered no account of such transactions; that the amounts of interest returned by him from time to time are not amounts actually received, but self-made estimates of what he thought he ought to return; that securities have been allowed to become lost and dissipated; that both principal and interest have been permitted to remain long overdue and unpaid, without any but the most indifferent efforts to collect; and in one case the Statute of Limitations appears to have barred the debt; no books have been kept, and he is utterly unable to give any correct or satisfactory account of his stewardship, extending over a period of more than ten years. In other words, practically the trust fund has no separate and distinct existence, either in specie or evidences of indebtedness, bearing the mark of the fund. With the exception of one note payable to himself as executor, as he says by mistake, the entire trust estate, like his cattle, bears his private brand.

Several extracts from his testimony might be made, but one will suffice. He says : " The interest set forth in my report to the Probate Court all came from notes. I have no means of informing the court as to the amount. Have no means of showing the specific amounts when collected, and from what particular sources. Cannot tell where the item of interest, April, 1875, $63, came from; can 't say from whom it was collected. Cannot give any information as to the persons to whom the moneys of the estate were loaned from the time they came into my hands in 1867 up to the date of this report —that has escaped my memory. Have no memoranda or means by which I can supply that information. Cannot give any more specific information in regard to the property which I took in trade at various times, in settlement of the debts of the estate, than that already given. Do n't know how many times I have done that in my dealings with the estate. Do n't

remember whether five or six, or twenty-five or a hundred times. Have done so whenever I thought it advisable, and the best course to collect the debt."

Such mismanagement of a fund 'left by a father to his infant children, cannot be tolerated. It was the duty of the appellee to have kept the trust fund separate and apart from his own moneys, and, in accordance with the directions of the will, to have loaned it at prevailing rates of interest to responsible persons; interest should have been collected when due and applied to the education of the children, as directed by the will, and any surplus should have been re-loaned. Bank deposits should have been in his name as executor, and notes and securities should have also been so taken. Ordinary diligence should have been used in collecting notes when due, and in re-investing; the same diligence should have been used in the preservation of securities and the entire fund. 3 Redfield, Wills, Chap. 16, Sec. 48; 2 Williams, Ex., *devastavit.*

Of all his transactions in respect to the trust fund, he should have kept an account of the amounts loaned, when and to whom loaned, and upon what security; amounts of principal collected, and how disposed of; amounts of interest collected and how expended or re-invested. In other words, an account which would have shown upon call, or in case of his death, the exact status of the trust fund, with items, dates, amounts, names of parties, etc., etc.

The failure of the executor in any one of these particulars might not justify his removal or charge him in every case. We lay down a general rule of duty, which such an executor should observe, and any infraction of which the county courts, as peculiarly the guardian of minor children, should promptly denounce and correct. In this way the fund will preserve its separate existence, capable of being clearly and distinctly designated and distinguished; and only in this way can trust funds be protected and gross abuses be prevented.

The finding of the referee, that this mismanagement has inured to the benefit of the estate, is unsupported by the evi-

dence, and, if supported, cannot avail. An executor cannot be heard to defend against a removal, on the ground that his violation of duty has benefited the estate. *Crump v. Williams*, 56 Geo. 591. Nor are the facts that the executor is solvent and responsible, and that his bondsmen are solvent and responsible, grounds for his continuance in his trust capacity.

The requirement that an executor shall give bonds for the faithful performance of his duty, is one safeguard against waste and mismanagement. The power of removal by the county court is another safeguard, and the legatees of the fund are entitled to the protection of both. The waste and mismanagement are not to be allowed to continue, on the ground that the legatees have an action at law on the bond; the policy of the law is to arrest it by removal. Nor can the fact found by the referee, "that the executor has not acted fraudulently," avail him, since his mismanagement has all the effects of a fraud.

The charge that the petitioner is influenced by improper motives, and but seeks the management of this fund with sinister views, is aside from the question.

It will be the duty of the county court, upon the removal of the executor, to appoint a successor under the provisions of the law; to take good and sufficient bond for the faithful discharge of his duty; to see that he discharges his duty, and generally to protect this fund from the rapacity of all comers.

The judgment of the district court is reversed and the cause remanded, with directions to enter up a judgment revoking the letters testamentary of the appellee, and taxing the costs of this proceeding against the appellee, to be paid out of his individual estate. The district court will cause its judgment and proceedings to be certified to the county court, together with all the papers belonging to the file of the county court pertaining to the estate of Lewis Stotts, deceased, to the end that the county court may proceed with the administration of the estate. There will be a like judgment against the appellee for costs in this court.

*Reversed.*