[No. 6085.]

TUCKERMAN ET AL. V. CURRIER ET AL.

1.   WILLS—*Construction*—The intention of the testator is to be derived primarily from the language of the will itself; and it is to receive effect as written, if not opposed to some positive rule of law, or against public policy.

And it is to be presumed that the testator knew the law governing the subject matter of his directions.

2.   ——*Power of Testator to Appoint Successors to Executor*—It seems that where the will directs that if the executor named dies, another shall be his successor, the one so designated is executor by

substitution, and not a mere administrator *de bonis non.* No rule of law prevents a testator from providing a system for the selection of a successor to the executor named in his will. He may provide conditional, limited, or substituted executors, in case of vacancy, conferring upon them the same powers as conferred upon those first designated.

And the county court, upon a provision in the will to that effect, may appoint a successor to the executor, with all the powers which the will confers upon the original executor.

3. ——*Construed*—The testator, a man learnèd in the law, after certain specific bequests, devised all the rest of his estate "to my said executors * * * and to the survivor of them, and their successors, to hold, manage and dispose of, in trust for the uses and purposes following:" And after providing for the payment of an annuity to his widow, directed that the residue of the net income of his estate should by "said executors," be annually paid over in equal parts, to his two sons; directed that "said executors" should carefully collect and take care of said estate; authorized sales by them of any part of the estate; the re-investment by them of the proceeds of sales; directed that upon the death of both of his sons, "said executors, and the survivor of them, and their successors" should convey all the estate remaining, to the heirs at law of said sons; and finally declared his desire that "said board of executors shall be continued until the purposes of this will are fully accomplished, and the trusts herein created are fully executed; and that any vacancy in said board shall, on application of any beneficiary herein named, be filled by the appointment of the county court" of the county of his residence. *Held,* that the manifest purpose of the testator was to confer the estate devised, and the trusts and powers prescribed in the will, not upon any person as a personal trust, but upon the person holding the office of executor, and their successors, in perpetual succession, and to annex such estate and powers to the office of executors. That upon the acceptance of the resignation of the executors named in the will, and a valid appointment of successors, not only the powers, but the trust estate before that vested in the original executors, devolved by operation of law, upon the successors, without the formality of a conveyance.

The will enjoined upon the executors to "distribute fully the total net annual income and increment of my estate to the persons and in the time and manner herein provided, and so as to avoid the accumulation in their hands of property in excess of the total value of the assets that shall originally come to them under this will."

*Held,* that under this provision the estate must be dealt with *in solido;* that the increase in the value of one piece of property was

not to be segregated, as income; that each parcel of property pertaining to the estate retains its character as part of the body of the estate, until every part of the estate has been subjected to examination and appraisement, and the whole aggregated.

4. EXECUTOR—*Removal—Effect Upon His Character as Testamentary Trustee*—Where one is named as executor, and by the same will as trustee, the revocation of his appointment as executor will not necessarily revoke his appointment as trustee; but where powers and duties not pertaining to the office of executor are conferred by the will upon the executor, he becomes, by virtue of his appointment, a trustee by operation of law; and if he resigns or is removed as executor, the duties and powers conferred upon him, in that character, terminate.

5. ——*Allowances*—Executors lawfully appointed and whose title, authority, and official conduct, is assailed by the beneficiaries under the will are justified in incurring any necessary legitimate expense in sustaining the validity of the will, and their appointments, and in defending, in good faith, their conduct while in office; and they are entitled to an allowance out of the estate for the amounts so necessarily and reasonably expended.

6. STATUTES—*Construed*—A statute (Mills Stat. § 4720) provided that when the letters of one of several administrators are revoked, etc., the county court may in its discretion "join others in their stead and place * * * and in case the letters of all of them shall be revoked, or all * * * shall depart this life before final settlement, etc., administration with the will annexed, or as the case may require, shall be granted to the person next entitled thereto." *Held*, that where the will so provided, executors might be appointed by the county court, as successors to those named in the will, and with all the estate and powers granted to, or conferred by the will upon, the original executors.

7. PLEADINGS—*Relief*, is to be confined to what, upon the facts stated, the party is entitled to.


*Appeal from Weld District Court.*—Hon. LOUIS W.CUNNINGHAM, Judge.

Mr. JAMES W. McCREERY, for appellants.

Mr. CHARLES D. TODD, Mr. R. T. McNEAL, and Mr. CHARLES R. BROCK, for appellees.

Mr. JUSTICE HILL delivered the opinion of the court:

The pleadings as well as the evidence in this case are

voluminous. In disposing of it, in addition to hearing oral arguments, we have read and considered over six thousand five hundred folios of record, in excess of five hundred pages of printed briefs, and have considered the questions involved in over five hundred and fifty cases cited, claimed to support the different contentions of counsel. Owing to the uncertainty of the title to such a large amount of property, and the importance of the other questions raised, we are not prepared to say that the greater part of counsels' efforts were not justified, but when the extent of such an amount of labor placed upon this court is realized, it is regrettable that many thoughtless people (including some members of the profession), who criticise appellate courts for their apparent delay in the number of such cases disposed of, are not familiar with these conditions.

We shall not attempt to set forth even the substance of all the issues but only such as are controlling of the principal contentions. The record discloses, without contradiction, that upon July 25, 1892, Judge Warren Currier died, leaving surviving his widow, (Lydia M.), two sons (George W. and Henry F.), their wives, and certain grandchildren (the sons and daughters of George W. and Henry F.). The deceased was possessed of a large estate, real and personal. He left a will which provides:

First, for the payment of debts.

Second, devises certain personal property to his wife.

Third, gives to his son George the use for life of the Greeley homestead, on certain conditions.

Fourth, gives to his son Henry the use for life (rent free) of certain real estate.

Fifth, provides for the adjustment of certain advancements made by the deceased to the above sons.

The sixth, seventh, eighth and a part of the tenth paragraphs, which are the cause of these contentions, read as follows:

"6. I give, devise and bequeath all the rest and residue of my estate, real, personal or mixed, and wherever situated, to my said executors, to-wit, Bruce F. Johnson and Charles H. Wheeler, both of Greeley, and to the survivors of them and their successors, to hold, manage and dispose of in trust for the uses and purposes following, to-wit:

(a)   Two thousand dollars on the net annual income therefrom to be collected by my said executors and paid over annually as an annuity to my said wife, in quarter yearly installments of $500 each during her natural life, the same to be accepted by her in lieu of dower and in full of all claims upon my estate not hereinbefore specified and provided for:—all such payments to be made upon her separate personal receipt and not otherwise.

(b)   All the rest and residue of the total net annual profit and income that shall be derived from my said estate shall be collected by my said executors and by them annually paid over in equal parts to my two sons (they being my only surviving children) to-wit:—said George W. Currier and Henry F. Currier, during their natural lives, one-half thereof to each and upon the separate personal receipt of each. In case of the death of either the share of the other, (he still surviving) shall continue and be paid over to him during his natural life. But the share of the one deceased shall from the time of his death be distributed and paid over to his widow if then surviving, and to his then surviving children in equal parts to each, share and share alike; and such payments shall continue during the natural life of my son then surviving. The annual payments aforesaid shall be made in quarter yearly installments and upon the separate personal receipt of the party entitled to receive the same, and not otherwise.

(c)   If either of my said sons shall die without leaving issue surviving him, the share of the annual income from my said estate of such deceased son shall go to and vest in and be paid over to his surviving brother in quarter yearly installments as aforesaid. If either of my said sons shall die leav-

ing issue surviving him, such issue shall take the part and share of his or her father, and where there are several surviving children they shall share and share. alike in said net annual income.

7. It is my will that my said executors shall carefully collect and take care of said estate and that they shall by proper sale or sales thereof convert such parts of it into cash as they shall judge to be for the best interest of my said wife and sons and other beneficiaries herein named or described, and to that end I give to said executors and to the survivors of them and to their successors, full power and authority to sell and convey said estate or any part thereof in fee simple, and to make all proper deeds and other conveyances thereof, reinvesting the proceeds of such sale or sales in such productive securities or improved productive real estate, as they may judge to be safe and remunerative, having primary reference to the safety thereof. I enjoin upon my said executors to distribute fully and carefully the total net annual income and increment of my estate to the persons and in the time and manner herein provided and so as to avoid the accumulation in their hands of property and assets in excess of the total value of the property and assets that shall originally come to them under this will.

8. Upon the death of both of my said sons, said George and Henry, said executors and the survivor of them and their successors are hereby empowered and directed to convey by proper deeds and other conveyances and in fee simple any and all estate, real, personal or mixed which shall then remain in their hands or subject to their control under the provisions thereof to the heirs-at-law of my said sons George and Henry respectively, the children of each taking one-half of said estate *per stirpes* in absolute ownership and in exclusion of all other persons; and I hereby give and bequeath to said children all the said estate so then remaining in the hands of my said executors, each family of children taking an inheritable estate therein in fee as the heirs-at-law of my said sons respectively,

and taking the same *per stirpes* and not *per capita*, each family of children taking one-half thereof."

"10. It is my desire that said board of executors shall be continued until the purposes of this will are fully accomplished, and the trusts herein created are fully executed; and, it is my will that any vacancy arising in said board shall on the application of any beneficiary herein named be filled by the appointment of the county court of said Weld county, Colorado, meaning the court in said county which shall have at the time jurisdiction of probate matters in Weld county."

The closing, unnumbered paragraph in the will reads,

"I hereby appoint Bruce F. Johnson and Charles H. Wheeler of said Greeley in said county of Weld to be the executors of this my last will and testament."

The will was probated September the 6th, 1892, in the county court of Weld county, and the executors named in the will, Bruce F. Johnson and Charles H. Wheeler, were given letters testamentary thereon. They qualified September 14th, same year, and acted as the executors from that date until May 23, 1893, when Charles H. Wheeler tendered his resignation, which was accepted by the county court and an order made appointing Horace G. Clark as his successor. Johnson and Clark continued to act until January, 1897, when they tendered their resignations to the county court, which, on January 30th, 1897, made an order accepting the resignations and appointing the plaintiffs in error, James Tuckerman and William Mayher as their successors. These last named appointees have continued to act as such executors and by virtue of such official capacity, have also performed the duties of trustees as provided for by the will, from the date of their appointment until the present time.

This action was instituted by the grandchildren of Warren Currier, the residuary legatees of the principal estate, against all former executors, Johnson, Wheeler, Clark, Tuckerman, Mayher, the two sons of the deceased (George W. and Henry F.), their wives and the widow (Lydia M. Currier).

The complaint charges numerous acts of maladministration and breach of trust against all of the five persons who had acted as executors and performed the duties of trustees. It charges fraud, mismanagement and misconduct, whereby it is alleged that the principal estate sustained great losses, and was then being depleted by the fraudulent and illegal acts of its alleged trustees, in some of which the life beneficiaries George and Henry Currier are alleged to be parties. It denied the right and jurisdiction of the county court to appoint subsequent executors to fill vacancies caused by the resignation of Johnson or Wheeler, or its jurisdiction to recognize the rights of such person to perform the duties of trustees, or to in any particular supervise the administration of the trust created by the will. It alleges that the title to the property was still in Johnson and Wheeler as trustees. It prays for a construction of the will to include a declaration, that the county court was without jurisdiction to appoint successor executors and that the tenth paragraph attempting to confer such power be declared void. It also prays for the removal of Tuckerman and Mayher; the appointment of proper trustees; for a conveyance by Johnson and Wheeler of the trust property to such newly appointed trustees and for the appointment of a receiver, etc.

George W. and Henry F. Currier (fathers of the plaintiffs) filed answers to the bill admitting all allegations against the executors; and part of those against themselves. These answers embrace cross-complaints in which they attempt to set up independent causes of action against the executors; they make further charges of unfaithfulness on the part of the then executors and their predecessors. They allege the conversion and misapplication of large sums of money, both principal and income, and ask for the discharge of the executors, for an accounting, the appointment of a receiver, for new trustees, and for money judgments in their favor for large amounts.

Demurrers filed by Johnson, Wheeler, Clark, Tuckerman and Mayher, which challenged the jurisdiction of the district court, were sustained. This ruling was reversed by our former court of appeals and the cause remanded with leave to all parties to amend. (*Currier v. Johnson*, 19 Colo. App. 94.) For other cases involving some phase of these contentions between some of the parties see *Currier v. Johnson*, 19 Colo. App. 245; *Currier et al: v. Clark*, 19 Colo. App. 250; *Currier v. Clark*, 19 Colo. App. 257; *Currier v. Johnson*, 19 Colo. App. 453; *Currier v. Johnson*, 31 Colo. 126.

Thereafter, the present and all past executors filed answers, denying all acts of maladministration, breach of trust, fraud, mismanagement and misconduct, and denied that the principal estate had sustained great or any loss, or that it was then, or had been depleted by the fraudulent acts of its trustees, etc., or at all. Trial was to court. The findings in substance, exonerate all the executors from any intentional wrong or fraud, or for any act of maladministration, breach of trust, mismanagement or misconduct for which they were to be held accountable in this action, except as hereinafter designated. The action was dismissed against Johnson, Wheeler and Clark, except that it was decreed that they execute quit claim deeds to the new trustees to be appointed for the original property, or any thereafter acquired by them as such officials. The material findings against Tuckerman and Mayher, in substance, are, that the county court assumed to appoint them as the successors to Johnson and Clark, who relinquished control of the estate to them; that they have ever since held possession and have assumed to administer the trust created by the will; that the county court did not appoint or assume to appoint them as administrators with the will annexed; that neither Wheeler nor Johnson, on relinquishing possession, conveyed or released the title of the property to those to whom they surrendered it; that Mayher and Tuckerman while still in charge have assumed to purchase with trust funds certain real estate (naming it); that by order of the county court they

paid from the income of said trust funds certain fees and
costs to Wheeler, Johnson and Clark on account of fees and
costs paid by them to counsel for defending this suit after the
reversal of said case by the court of appeals, a portion of
which was never paid back; that they paid counsel fees and
costs in defending a suit in the county court against them,
brought to compel them to keep separate accounts of principal
and income funds; that since the decision of the court of ap-
peals they have continued to file reports in the county court,
and paid court costs in connection therewith from the income
of the life beneficiaries, including large amounts for filing and
recording their reports, and for having them examined and
passed upon; that they have retained from the income certain
amounts for their salaries as executors, also have paid large
amounts for counsel fees and costs in defending this litiga-
tion; that the property belonging to said trust estate is now, by
reason of improved financial conditions, and the prosperity
prevailing in the city of Greeley and vicinity, materially in-
creased in value, and is now of a value in excess of its actual
and inventoried value at the death of Warren Currier, in the
sum of at least $10,000.

The conclusions of law necessary to consider are, that
by said will the legal title to said estate was vested in defend-
ants Wheeler and Johnson in trust for the beneficiaries named
therein; that such legal title did not thereafter wholly or par-
tially or at all devolve upon or become vested in Clark, May-
her or Tuckerman; that in accepting the resignations of
Wheeler and Johnson, and in assuming to appoint Clark,
Mayher and Tuckerman as successors, the county court of
Weld county was without jurisdiction, right or authority to
do so; that in so far as the tenth paragraph of the will at-
tempts to confer upon said court power or jurisdiction to ap-
point trustees to administer said trust the same is void and
inoperative; that neither of defendants, Mayher nor Tucker-
man, has any lawful title to, or right or interest in, the prop-
erty belonging to said estate. The decree removes them be-

cause not legally appointed, and for other reasons as it is alleged. In addition to their removal personal judgments were entered against the defendants Tuckerman and Mayher in favor of George W. and Henry F. Currier (the life beneficiaries) in the sum of $10,626 for certain moneys paid out by them as aforesaid. The decree further provides that the trustees of said estate distribute to the life beneficiaries, George W. and Henry F., the increment or increase as found to exist in the sum of $10,000, under certain arrangements not necessary to consider. The defendants Tuckerman and Mayher bring the case here on appeal.

In the execution of wills the cardinal rule is to have due regard to the directions of the will and the true intent and meaning of the testator to be derived, primarily from the language of the will itself, and if the same is not contrary to some positive rule of law or against public policy, to give it effect just as written.—*In Re Shells' Estate,* 28 Colo. 167; *Platt v. Brannan,* 34 Colo. 125; *In Re Shapter's Estate,* 35 Colo. 578, 587; *Bacon v. Nichols,* 47 Colo. 31; *Murphy v. Carlin,* 113 Mo. 112; *Gordon v. McDougall,* 84 Miss. 715; Redfield on Wills, p. 385; *Nangle v. Mullanny et al.,* 113 Ill. App. 457; *Kenney v. Kennedy et al.,* 105 Ill. 350.

With this object in view we will proceed to consider the questions presented in their historical order. The first relates to the capacity in which Johnson and Wheeler were appointed. The appellants contend, that the testator intended to and did appoint them as executors, only, of his will, but by attaching to the office of executor certain trust duties, it made them, by operation of law, *ex-officio,* his trustees during the period they held the office of executor; that the title was vested in the persons from time to time who held the office, and not in the persons first named as executors. The appellees contend that a proper construction of the entire will discloses that he not only appointed them as executors, but, by the language used, he, also designated them personally as the

trustees of the trust thus created and that the title went to them personally as such trustees and is still in them.

In construing a will it must be presumed that the testator knew the law.—*Nangle v. Mullanny et al.,* 113 Ill. App. 457.

This presumption is unnecessary in the case at bar. The testator was conceded to have been learned in the law, admitted to have once been a justice of the supreme court of Missouri, and, unless the language in the will indicates to the contrary, we must presume, that he used the word "executor" advisedly; that had he intended to appoint Johnson and Wheeler personally as trustees, and to devise his property to them *in personam* in trust, he would have used language sufficient to convey that intention. We fail to find such an expression in the will, but to the contrary running throughout the entire instrument we find the expressions "my said executors * * * and to the survivor of them and their successors" with a method provided in the will for the appointment of successors. The word "executor" is used in nearly every paragraph; the word "trustee" not at all. In paragraph 6 the device is made to executors, the survivors of them and their successors. In paragraph 7 the power is given alike to the executors and successors. In paragraph 8 the duty of final distribution is laid alike upon the executors and their successors. Paragraph 10 provides for the continuance of the board of executors, and the filling of vacancies by appointment made by the county court. In paragraphs 6, 7, 8 and 10 the final duty of distribution, as well as the continuance of the office until all purposes of the will are accomplished, are given and bestowed, not upon any definite person as a personal trust, but upon the persons in office in perpetual succession. The testator knew and assumed (as we all must) that executors die, resign, or become disqualified, and he could not have, by any use of words or language, more firmly annexed a declaration of his intentions to provide that the office (the functions and powers given) was not to, in this manner, be endangered

until the objects provided for by the will had been accomplished. Taking these facts into consideration, the language is convincing that he intended to annex the estate and power devised and donated to the office of executor *virtute officii*. The will named Johnson and Wheeler as executors; it did not name them as trustees. They therefore became trustees by virtue of the fact that certain powers and duties were conferred upon them as executors which do not pertain to the powers and duties of executors, but belong to those of trustees. If a person be expressly named as executor, and also as trustee, the revocation of his appointment as executor will not necessarily revoke his appointment as trustee; but where powers and duties are conferred on a person appointed as executor, which do not pertain to the powers and duties of an executor but pertain to those of a trustee, the executor by virtue of his appointment becomes a trustee by operation of law, in which event the revocation of his appointment as executor, or his resignation as such, revokes his power to act as trustee and the duties and powers thus conferred upon him as an incident to his appointment as executor, terminate.—*Nangle v. Mullanny et al.*, 113 Ill. App. 457; *Mullanny v. Nangle et al.*, 212 Ill. 247; *Johnson v. Lawrence et al.*, 95 N. Y. 154; *McAlpine et al. v. Potter et al.*, 126 N. Y. 285; *McArthur v. Scott,* 113 U. S. 340; *Potter v. Couch,* 141 U. S. 296; *Scott v. West,* 63 Wis. 529; Vol. 7, Am. & Eng. Ency. of Law (1st Ed.), p. 238; *Colt v. Colt,* 111 U. S. 566; *Mather v. Mather et al.,* 103 Ill. 607; *Estate of Matthew Delaney,* 49 Calif. 76; *Carson v. Carson,* 88 Mass. 397; *Groton v. Ruggles et al.,* 17 Me. 137; Vol. 1, Perry on Trusts (5th Ed.), p. 36; *Mott v. Ackerman,* 92 N. Y. App. 539; *In Re Sturgis,* 58 N. E. (N. Y. App.) 646; *Royce et al. v. Adams,* 123 N. Y. App. 402.

For the reasons stated (which are fully supported by the authorities last cited) we conclude from the language used, that Johnson and Wheeler, by virtue of their appointments as executors and the powers given them by the will, became trustees by operation of law; that their resignation, its acceptance,

and the appointment of their successors (if valid) revoked and terminated their powers to act as trustees, and that the ·title to the trust property devolves, by operation of law, upon their successors without the formality of a conveyance or assignment.

It is conceded that executors nominated by the will and their successors legally appointed may, as such executors, hold and administer testamentary trusts, if the will so provides *ex-officio* or *virtute officii.*—*Killgore v. Cranmer,* 48 Colo. 226; *Johnson v. Lawrence,* 95 N. Y. 154; *Laytin v. Davidson,* 95 N. Y. 263; *In Re McAlpine,* 126 N. Y. 285; *Kidwell v. Brummagim,* 32 Calif. 436; 39 Cyc. 249.

The fallacy of the appellees' arguments lie in the assumption that by the will Johnson and Wheeler were personally designated as the trustees of the trust created, when, as we have shown, it named them as executors only, and did not expressly or by necessary implication designate them as the trustees; they became *ex-officio* trustees only by virtue of the fact that certain powers and duties were conferred upon their office of executors which did not pertain to the regular duties of executors, but belonged to those of trustees. This is self-evident when we consider the language in the will which places these duties upon his executors, the survivor of them, and their successors, and devises his property to his executors, the survivor of them and to their successors, and provides for the method for the appointment of such successors. We know of no rule of law which prevents a testator from providing a system for the selection of a successor executor. As we understand the rule, he may provide conditional, limited or substituted executors in case of vacancy, giving to them the same powers as those designated in his will.—11 Am. & Eng. Ency. of Law (2nd Ed.), 747-748; *Bishop v. Bishop,* 56 Conn. 208; *Ingle v. Jones,* 9 Wall. 486, 497.

We are not unmindful of the argument and have considered the cases, which hold, where the same parties are appointed executors and trustees, and after many years have

elapsed since the performance of the last duties as executors, and that the duties thereafter performed have been only those of trustees in such capacity, the law will assume that they have ceased to act as executors, and are acting as trustees only; but in the case at bar from the language used, the testator intended that the executors named, their survivors or successors should be continued and act as executors until the purposes of the will were fully executed. This intention is not declared in a single clause or sentence of the will, but runs through all its frame work and is interwoven into almost every provision thereof. We know of no rule of law which compels executors to close up an estate and turn it over to themselves as trustees within a certain time, where the will discloses a different intention. The opinions of this court throughout are that it is expected that the executors will continue to hold and act as such until the duties imposed upon them by the will have been fully executed.—*Hake v. Stott's Executors,* 5 Colo. 140; *Killgore v. Cramner,* 48 Colo. 226; *Wyman v. Felker,* 18 Colo. 382; *French v. Woodruff,* 25 Colo. 339, 346.

Suppose the will provided that the executors should, within a year from the date of its probate, sell the real estate and divide the proceeds among the heirs; in such case no one woud contend that such a duty was not properly imposed upon the executors, and that they should do this before they were discharged as such. In many of the cases cited the principal reason for holding the persons named as executors and trustees, in the capacity of trustees only, is that the wills clearly contemplate a period of time when there shall be a separation of functions and duties, when the duties of the executors as such shall end, and when, by reason of the trust invested in them by force of the will, they shall assume exclusively the character of trustees; but this will discloses a contrary intention; it provides that the board of executors shall continue until the purposes of the will are fully accomplished, and that any vacancy arising, on the application of any beneficiary is

to be filled by the county court of Weld county. The testator emphasizes this intention by saying "meaning the court in said county which shall have at the time jurisdiction of probate matters in said Weld county." The contention of the appellees that the estate is unnecessarily burdened with the cost of executors' reports, etc., is answered in the declaration of the testator himself, a man learned in the law. When making these provisions he must have known that his estate would be burdened with the necessary court costs incidental thereto throughout the period prescribed by him for keeping it intact. Having thus provided the system which he thought necessary for the protection of his heirs—if it does not violate any positive rule of law—neither the beneficiaries nor the courts have any power to change the conditions prescribed.

The next contention urged is, assuming that the construction we have given the will is correct and that the testator intended as we have indicated, it cannot be carried into effect for the reason that the tenth paragraph which empowers the county court of Weld county to appoint a successor executor in case of a vacancy is void, for the reason that the county court sitting as a court of probate is without jurisdiction to make such appointment of either an executor or trustee; that only district courts which have unlimited chancery jurisdiction can appoint such trustees; that the county court sitting as a court of probate is limited to the appointment of an administrator with the will annexed.

Section 23 of article VI of the constitution says that the county courts shall be courts of record and shall have original jurisdiction in all matters of probate, settlement of estates of deceased persons, etc., and such other civil and criminal jurisdiction as may be conferred by law, etc. Eliminating appellants' contention that the order of the county court is broad enough to cover their appointments as administrators with the will annexed authorized by section 4682, Mills', and that section 4749, Mills', gave to them as such the authority to do everything which they have done; if the legislature has

clothed the county court with the power to appoint successor executors, it cannot be consistently argued that this section of the constitution has not vested them with this power. General section 4720, Vol. 2, Mills' Ann. Stats., in force at the time of the execution of this will, and at the time of these appointments, provides that where letters of one of several executors or administrators are revoked, or one or more of the executors or administrators shall die or become disqualified, the county court may, in its discretion, join others in their stead or place, and require additional bonds from such new administrator or administrators, or the survivor or survivors of such as shall not have their powers revoked, shall proceed to manage the estate, and in case the letters of all of them shall be revoked or all of said executors or administrators shall depart this life before final settlement and distribution of the estate shall have been made, administration with the will annexed, or *as the case may require shall be granted to the person next entitled thereto;* that in all cases where such executor or administrator shall have his letters revoked as aforesaid he shall nevertheless be liable on his bond to such subsequent administrator or administrators, or to any other person or persons aggrieved for any mismanagement, etc.

Unless all rules of construction are disregarded, by the language of this section, it was intended to vest county courts with power in certain cases to appoint subsequent executors. It says, "where one or more of the executors shall die or become disqualified, or in case the letters of all shall be revoked, the county court may, in its discretion, join others or * * *. administration with the will annexed, or as the case may require shall be granted to the person next entitled thereto." If, as contended by counsel the only appointment that could be made under this section was that of administration with the will annexed, what meaning is to be given the word "executors" and what use is to be made of the words "join others in their stead or place?" The words "to join others in their stead or place" when applied to executors certainly mean an-

other executor in the place of the other. On down in the section we find the words "or as the case may require shall be granted to the person next entitled thereto" when applied to executors as in this case, that person would be the person selected in the manner provided by the testator in the will; otherwise, all these words and phrases in the section must be treated as surplusage. This is contrary to all rules of construction when full force and effect can be given them and thereby harmonize the entire section. This can be done by holding that the county court may appoint successor executors in a proper case, thereby giving force and effect to all the language used in its ordinary sense.

In *Hake v. Stott's Executors,* 5 Colo. 140, this construction was assumed as a matter of course. The will appointed a certain person executor. The action was brought for his removal. The court held he should have been removed and that the county court was possessed with that power. After so deciding, among other things, the court said,

"It will be the duty of the county court, upon the removal of the executor, to appoint a successor under the provisions of the law; to take good and sufficient bond for the faithful discharge of his duty; to see that he discharges his duty, and generally to protect this fund from the rapacity of all comers."

We also have a legislative construction of this section. In 1903 it was thought proper to make a complete revision of our probate laws by their repeal and re-enactment; many changes were made in order to clear up questions then in doubt. The words "guardian," "conservator," "executor" and "administrator" were repeatedly inserted in the new act in order to make the meaning of certain sections more clear and certain. It is common knowledge that the burden of this revision was assumed by an organization of county judges effected in 1902. Upon account of their experience and knowledge of the defects existing, these gentlemen were eminently fitted to supervise such work. When we come to the revision

of this section, which is general section 7121, R. S:, 1908, we find the words "subsequent executor" are added in the last part of the section. This was unquestionably for the purpose of making clear the right of subsequent executors to bring suits against their predecessors for any defalcation, etc., the same as the former act said that administrators might do. The legislature must have assumed that the first portions of the old section authorized the county court to appoint subsequent executors, for the reason that they made no change in that portion, but realizing that there was a doubt as to the authority of a subsequent executor to bring a suit against his predecessors, they sought to make that more clear by inserting the words "subsequent executor," thus making the act read the same throughout as to administrators and executors. We conclude that the county court was possessed with the power, under the circumstances disclosed to appoint subsequent executors, and the appointments of the plaintiffs in error being substantially in compliance with the provisions of the will that they are not subject to attack. Illinois has vested her county courts with the same power.—*Kennedy v. Kennedy*, 105 Ill. 350; *Kinney v. Keplinger*, 172 Ill. 449.

It appears to be conceded where a direction in a will is that if the named executor dies another person shall be the successor; that the successor thus appointed is an executor by substitution and not a mere administrator *de bonis non.*— *Blake, Adm., v. Dexter et al.*, 66 Mass. 559; *Kinney v. Keplinger*, 172 Ill. 449.

In removing the present executors the decree says, in substance, because of their unauthorized appointment by the county court, and their misconduct as acting trustees of said estate, and the friction and feeling existing between them and the life beneficiaries. The acts pertaining to their alleged misconduct are not stated, nor any acts of hostility to the life beneficiaries. The record as a whole discloses that the real contest centers around the county court's jurisdiction to make the appointments, which included the validity of paragraph

ten of the will, and not the other matters. The court in substance exonerates the executors from any fraud pertaining to any alleged breach of trust and in the oral opinion rendered says, in substance, that he was satisfied that no appointment he could make would long be satisfactory to the life beneficiaries, also that none of the executors had diverted any of the trust funds, but that they were not trustees *de jure,* and that he would do the same as though it was a matter of first instance, as if no trustees were in existence. From this record, had it not been for the erroneous conclusions of law pertaining to the jurisdiction of the county court, we cannot say that the decree would have been as it is pertaining to the removal of the executors, regardless of the alleged hostility existing between them and the life beneficiaries, whom it appears desire their removal.

It is quite probable that had the life beneficiaries requested the resignation of the executors, and not coupled with it a demand for the return of a large sum of money, most of which at least was properly paid out by them, that they—as their predecessors had done—would have resigned and turned the management over to others; but when the validity of certain portions of the will, including that upon which their appointments were based, is attacked, and when it is sought to hold them personally liable for the moneys expended in the defense of these matters, in the prosecution and defense of other suits, and in payment of their salaries, it is hardly probable that the mind of any individual is so constructed that he would be willing, under such circumstances, to voluntarily relinquish his claim to such appointment, confess the error of his actions (conceded by the court to have been in good faith), and also pay to the life beneficiaries a large amount of money equal to that expended by him in these matters, including that received as his salary for the time spent during a series of years in the performance of such duties. In any event from the conclusions reached, it follows that the county court has exclusive jurisdiction in the appointment of succes-

sor executors when so provided for by the will.—General section 7121; R. S., 1908; *Hake, Guardian, v. Stotts' Executors,* 5 Colo. 140; *Kennedy v. Kennedy,* 105 Ill. 350.

It is alleged in the pleadings that some of the counsel fees were excessive. It is also alleged that other moneys paid to former executors were not justifiable, and that other fees paid in the defense of certain litigation against them were not justified or expended in good faith, for which reasons, the judgment of the trial court should be sustained concerning these matters. There is practically no evidence pertaining to the amount or value of these services, or any attempt to separate their acts as executors or as trustees. The only evidence we call to mind concerning extortion of fees is that of the appellant Mayher upon cross-examination, wherein he states, in substance, that it appears to him that some of the counsel fees were too high. The record as a whole discloses that the portion of the decree calling for the removal of the appellants and the personal judgment against them is based principally upon the erroneous assumption that the county court was without jurisdiction to appoint successor executors, for which reasons we do not feel justified at this time in attempting to separate and pass upon the matters proper to be determined in an action of this kind, as the issues and evidence now stand, but prefer to leave them to a trial court when they are properly separated and presented in harmony with the views herein expressed, that the appellants are the duly and lawfully appointed subsequent executors of the will. This justifies them in incurring any necessary and legitimate expenses in attempting to have sustained the validity of the entire will, their appointments thereunder, as well as to in good faith defend their course of procedure when attacked while in office. They have a right to an allowance out of the estate funds in a reasonable amount necessarily expended in such matters.—2 Perry on Trusts (3rd Ed.), sec. 910; *Kennedy v. Kennedy,* 105 Ill. 350; *Sherman et al. v. Loman,* 137 Ill. 94; 28 Am. & Eng. Ency. of Law (2nd Ed.), 1091.

·The ·decree provides that the trustees distribute to the life-·beneficiaries, George ·W. and Henry F. Currier, under certain conditions $10,000 out of the estate funds, as the increment ·or increase, pursuant to the provisions of paragraph 7 of the will. Considerable argument is presented and many authorities cited as to the correct meaning of these words as here used. It is claimed by the appellants that no such issue was raised by the pleadings or tried; that under our rules of practice the relief must be confined to that called for by the ·facts stated in the pleadings. The following cases sustain this general rule.—*Soden v. Murphy,* 42 Colo. 352; *Mott v. Scott,* 35 Colo. 68; *The Rubie C. G. M. Co. v. P. A. G. M. Co.,* 31 Colo. 158; *Greer v. Heiser,* 16 Colo. 306; *City of Pueblo v. Griffin,* 10 Colo. 366; *Miller v. Hallock,* 9 Colo. 551; *Tucker v. Parks,* 7 Colo. 62.

The allegations of the complaint as well as those in the cross-bill of the life beneficiaries were that the principal estate had been fraudulently reduced under the management of the several executors in about $25,000; for this reason the accounting was sought to be followed by a judgment against the executors requiring them to return to the principal estate this amount. The executors denied these allegations. To justify this judgment the court had to find not only that the allegations of the complaint and cross-complaint in this respect were not true, but that the allegations of the answer were more than true. If the findings upon which this portion of the judgment is based are to be considered at issue, we have the anomalous position of having the defendants attempting to prove a case in favor of the plaintiffs and cross-complainants, which they themselves are attempting to disprove. The appellants contend if it were a proper issue that the estate must be dealt with *in solido,* that the increase or supposed increase in one piece of property cannot be segregated as income, but still remains as a part of the principal estate until at least every part of the estate has been subject to an examination and appraisement and the whole aggregated. This

appears to be the general rule.—*Outcalt v. Appleby,* 36 N. J.
Eq. 73; *Parker v. Johnson,* 37 N. J, Eq. 366; *Parker v. See-
ley,* 38 Atl. (N. J.) 280; *Parsons v. Winslow,* 16 Mass, 361;
*New England Trust Co. v. Eaton,* 4 N. E. (Mass.) 69; *Van
Barcom v. Dager,* 31 N. J. Eq. 783.

   In addition to there being no such an issue made by the
pleadings, the record discloses that the rule above stated was
not followed.    There was no evidence offered covering, or
full or complete appraisement taken of all the property for the
purpose of determining this question, or to show where cer-
tain items of property had increased in value (as found by the
court in Greeley and vicinity) that this rise would offset the
loss in certain other items which may have decreased in value.
Manifestly, this could not be done upon the evidence concern-
ing certain portions of the property only which had increased
in value, when nothing is said about the remainder.

   The facts and rule of law last stated are not seriously
controverted, but are sought to be avoided by the contention
that the appellants have no right to be heard upon the judg-
ment pertaining to the increase and increment, the manner in
which it was secured, or the evidence upon which it is based,
under the well known rule that they have no personal inter-
est in the result of this portion of the judgment which con-
cerns the life beneficiaries and the residuary legatees only, all
of which were parties to the action.    The following cases are
cited to sustain this contention.—*Benton v. Hopkins,* 31 Colo.
518; *Barth v. Richter,* 12 Colo. App. 365; *Black v. Kirgan,* 28
Am. Dec. 394; *Briard v. Goodale,* 86 Me. 100; *Estate of Mar-
rey,* 3 Pac. (Calif.) 896.

   Had such an issue been made by the pleadings we might
find it necessary to pass upon the question, but the primary
object of this case was to secure a construction of the will,
the removal of the executors and personal judgments against
them.    Appellants charged with malfeasance in office; they
had the right to be heard on these charges as well as upon the
construction of the will, and the right to appeal from any rul-

ing thereon. They brought with it the entire case wherein they would in any manner be effected personally, or in their official capacity; the matter of the increment or increase is not here alone. It was not made an issue by the pleadings in the court below. No motion was made to dismiss the appeal concerning this portion of the judgment. The record shows that some of the plaintiffs who are residuary legatees were minors represented by a guardian *ad litem* probably selected at the solicitation of the life beneficiaries; we say this, from the fact that the trial court, in substance, found that the original suit was instituted and thereafter maintained by them; upon this subject the court in its preliminary findings says:

"I have no difficulty in determining that this action has been waged by one, if not both, of the life-beneficiaries, and mostly instigated and inspired rather by them than by the children—the remaindermen. This is apparent all through the record.

It is significant that the remaindermen ask nothing of the beneficiaries, attended with the additional circumstance of the cross-bill being filed on the very same day, and, if I am a literary critic at all, drawn by the very same hand. It now appears of record that Henry is bearing most of the expenses of the litigation which abundantly supports the conclusion that it is being waged for his benefit."

We are of opinion that the evidence justifies this statement and when all these facts are taken into consideration with the fact that the cause must be reversed for other reasons, we do not think that such a case is presented which requires us to at this late date segregate this portion of the judgment from the other in order to establish a precedent either way as to the right of executors to take an appeal from such judgments, but prefer to remand the cause for a new trial when, if desirable, such an issue can be properly made up and evidence received and considered concerning it.

The judgment is reversed and the cause remanded with
leave to the parties to amend their pleadings as they may be
advised.                               *Reversed and Remanded.*

Decision *en banc.*

Mr. JUSTICE MUSSER and Mr. JUSTICE GARRIGUES not
participating.

Upon petition for extension of opinion by some of the
appellees and for rehearing by others.

It is urged upon behalf of some of the appellees as this
suit was instituted in part to procure a construction of the will
that in considering the portion of the judgment which pertains
to the increase or increment awarded to the life beneficiaries,
we should place a construction upon the language in the will
which reads:

"I enjoin upon my said executors to distribute fully and
carefully the total net annual income and increment of my
estate to the persons and in the time and manner herein pro-
vided and so as to avoid the accumulation in their hands of
property and assets in excess of the total value of the prop-
erty and assets that shall originally come to them under this
will."

In view of a new trial or continued litigation upon this
subject we have thought it proper to do so. A reading of the
original opinion will disclose that in passing upon the ques-
tion of increment, we accepted without discussion the mean-
ing given to the word by the testator in the above paragraph.
When this paragraph is considered in connection with the
other portions of the will, which empowers the executors in
their discretion to sell and dispose of all or any part of the
property, both real and personal, and to re-invest the proceeds
in productive securities or improved productive real estate as
they may deem safe, there ought not to be any contention
over it. Unless the force of this language is to be eliminated.

it follows that the life beneficiaries are entitled to receive from the executors both the income and any increase in the total value of the estate above its value at the time it came into their hands. They are the only ones (except in case of the death of one of them) to whom the executors could distribute the increment so as to avoid the accumulation in their hands of property in excess of the total value of the property and assets that originally came to them under the will. This was unquestionably the intention of the testator. It could not apply to the residuary legatees; as to them (as there used) it would be meaningless, for the reason, that, at the time they are to receive anything (except in case of the death of one of the fathers) it provides for a distribution of the total estate among them, but not for any increment or increase alone. When they are thus to receive the estate nothing is to be left to accumulate in the hands of the executors. The reason for the reversal of the award of $10,000 allowed as increment was because no such an issue was raised by the pleading, and no such case tried and because the court did not deal with the estate *in solido,* which is the general rule in such cases. This rule is specially applicable here, where it is possible for the executors not to be possessed of any of the original property which came into their hands, and where the executors are enjoined (which makes it their duty) to distribute to the life beneficiaries the net annual income and increment of the estate so as to avoid the accumulation in their hands of property and assets in excess of the total value of the property and assets that originally came to them under the will.

We adhere to our former views in all matters covered by the original opinion. The petition for rehearing is denied.

Mr. JUSTICE WHITE dissents.